775 A.2d 786

MARIA TARTAGLIA, PLAINTIFF, v. PAINE WEBBER,
INC. AND HERB JANICK, DEFENDANTS.

Superior Court of New Jersey
Law Division Hudson County
Civil Part

Decided February 21, 2001.

*Reitman Parsonnet*, for plaintiff, *Bennet D. Zurofsky*, appearing.

*Epstein Becker & Green*, for defendants, *Robert H. Bernstein*, appearing.

FUENTES, J.S.C.

This matter comes before the court by way of a return date of an Order to Show Cause Temporary Restraints issued by Judge Maurice Gallipoli on January 31, 2000.[1] The gravamen of defendant's application centers on plaintiff's pre-litigation conduct in procuring certain alleged confidential and/or proprietary documents. The moving party, defendant Paine Webber, seeks by way of sanction (1) the dismissal with prejudice of plaintiff's complaint; (2) the immediate return of all documents at issue; (3) an order

---

[1] Judge Gallipoli originally made the Order to Show Cause returnable on March 31, 2000, before Judge Seymour Maguiles. Thereafter, the case was referred to mediation. After several unsuccessful attempts at mediation, the case was reassigned to me for adjudication.

permanently enjoining plaintiff from disseminating the documents or otherwise revealing their contents to anyone in any way and for any reason; and (4) an award of counsel fees for the cost incurred in connection with the prosecution of this motion. The adjudication of these legal claims presents issues of first impression, never before addressed by any court in this State.

## FACTUAL FINDINGS

The plaintiff, Maria Tartaglia, worked as a staff attorney for defendant Paine Webber until her termination in April, 1998.[2] Defendant, Herb Janick, was at all times relevant to this matter General Counsel to Paine Webber and plaintiff's direct supervisor. In her complaint, plaintiff alleges that her termination was unlawful and a violation of New Jersey's Law Against Discrimination. *N.J.S.A.* 10:5–12. Specifically, plaintiff alleges that she is the victim

> ... of retaliation for her assertion and support of various internal complaints within the legal department regarding such matters as sex harassment, racial discrimination, gender discrimination, non-compliance with wage and hour laws, non-compliance with subpoenas and other orders served upon the company. (p–3, plaintiff's brief in opposition to Order to Show Cause.)

Plaintiff also alleges that she was discriminated against due to her psychiatric disability which has been aggravated as a result of defendant's alleged misconduct.

Defendant's application is based on five separate items in plaintiff's possession and transmitted to defendant in response to a discovery demand for production of documents. As was made clear in the course of oral argument, the court's analysis will focus on only two documents: [3] (1) the December, 1997 memorandum to the file, authored by defendant Janick and (2) the computer generated employee information list. The former was obtained by

---

[2] In her deposition testimony taken on March 9, 2000, plaintiff described her position at Paine Webber as Corporate Vice–President in the Legal Department.

[3] Defendant concedes that the other three items are essentially innocuous and were brought to the court's attention only to show a pattern of conduct.

the plaintiff while employed at Paine Webber. The latter was procured by the plaintiff after her termination.

**December, 1997 Memorandum**

This document was prepared by Mr. Janick shortly after an employee evaluation conference he had with another staff attorney in the legal department. It was addressed to "File" and was stored in his office computer. The phrase "CONFIDENTIAL ATTORNEY WORK PRODUCT MATERIAL" was written in capital letters at the top right hand corner of the document.[4] The "reference" in the memo identifies the attorney/employee by name.

The document's location within the computer is disputed. Mr. Janick describes the area as "accessible only by me and Paine Webber's computer systems administrator." Ms. Tartagila, on the other hand, alleges that she located the document "in the word processing files that came up on the screen of the computer on my desk at Paine Webber." Resolution of this factual conflict is not material to the adjudication of the legal issues presented by this application. As the following deposition testimony clearly demonstrates, plaintiff knew of the confidential character of the document at the time she gained access to it.

Q. And when you looked at the first page [of the memorandum] and read the disclaimer at the top indicating it was a confidential document, did you understand then that it was a confidential document?

A. I told you before that I don't remember if I saw that when I first read the document. I don't remember If I saw that part.

Q. How long did it take you to conclude that in fact it was a confidential document?

A. How long you mean as far as seconds?

Q. Correct, correct.

---

[4] Despite this designation, the court is satisfied the document is not privileged as either an attorney-client communication under *N.J.R.E.* 504 or under the work product doctrine as material prepared in anticipation of trial. *State v. Mingo*, 77 *N.J.* 576, 392 *A.2d* 590 (1978); *Medford v. Duggan*, 323 *N.J.Super.* 127, 732 *A.2d* 533 (App.Div.1999); *State v. DeMarco*, 275 *N.J.Super.* 311, 646 *A.2d* 431 (App.Div.1994); *R.* 4:10–2(e).

A. I don't know, less than five minutes.

Q. After you printed off the document, so you had a hard copy in front of you?

A. No, before I printed it.

Q. After you printed off the document, you told us you read the entire document. Correct?

A. Yes.

Q. So then you saw at the top the disclaimer 'confidential attorney work product material' . . . Correct?

A. Probably.

Q. So at the time, you understood, did you not, that this was a confidential document which you were not supposed to be reviewing. Correct?

A. I understood that it was a document that Herb [Janick] probably did not want other people reading.

The document contains Mr. Janick's impressions and professional assessment of this staff attorney. It includes his critique of the lawyer's managerial skills, specifically naming other employees within the legal department for illustrative purposes. It also identifies a number of incidents where the attorney improperly utilized company resources for personal or otherwise unauthorized reasons. The document concludes with a memorialization of events reported to Mr. Janick that seemed to indicate that the attorney in question may have taken retaliatory action against the subordinate who reported the misuse of company property. It further documents allegations that the attorney was directing other employees under her "to lie" and mischaracterize her conduct in connection with the past incidents of alleged misuse.

The memorandum was not connected in any way to plaintiff's employment responsibilities at Paine Webber. Plaintiff's motives for appropriating the document were purely self serving: to advance and support the legal claims she anticipated bringing against defendant.

Q. Why did you print it if you had no reason to believe Mr. Janick wanted you to see it?

A. Because I thought it might be relevant for my case.

Q. Your case meaning this law suit?

A. Well, I didn't have a lawsuit at the time.

Q. So when you used the words 'my case' what were you referring to in December of 1997?

A.   I am referring to my belief at the time that I was being harassed and treated unfairly relative to other people in the department because of various events that had occurred prior to my seeing this memo.

**Computer Generated Employee Information List**

This document is comprised of two separate computer generated lists of Paine Webber employees procured by plaintiff on two separate occasions, one during her term of employment and the other after her termination.   The first list was solicited by plaintiff ostensibly to ascertain where an employee she needed to communicate with was assigned within the company.   The second list was sent to her by an unknown "friend" within the legal department.[5] Read together the documents contain employee information compiled by Paine Webber's Human Resources Department from January 1, 1992 to May 2, 1998.   The data categories include employee name, social security number, department assignment, job title, date hired, termination date and reason for termination. Plaintiff's reason for appropriating this information is the same as with the Janick memorandum, she thought it could be useful in the prosecution of her legal claims against defendant.

## LEGAL ANALYSIS

Defendant argues that plaintiff's pre-litigation conduct in gathering this information tarnishes the judicial process and undermines the efficient and orderly administration of justice.   It cites *Abtrax Pharmaceuticals, Inc., v. Elkins–Sinn, Inc.,* 139 N.J. 499, 655 A.2d 1368 (1995) in support of its application for the imposition of sanctions against plaintiff.   However, unlike the present case, the *Abtrax* Court was confronted with post-litigation misconduct.   In this context, this court has indisputable authority to enforce the rules of discovery and to sanction a party's violation

---

[5] Although plaintiff purports not to know who provided her with the list, the cover sheet preceding the computer run reflects the request to have come from Caudice (Candice) Lane, a secretary in Paine Webber's legal department and someone Ms. Tartaglia considers to be a friend.

of these rules. *Lang v. Morgan's Home Equip. Corp.*, 6 *N.J.* 333, 78 *A.*2d 705 (1951); *Calabrese v. Trenton State College*, 162 *N.J.Super.* 145, 392 *A.*2d 600 (App.Div.1978). Indeed, in further contrast to the facts at bar, the *Abtrax* decision involved the deliberate withholding of discoverable material.

█ Plaintiff's conduct, however, relates to the spirit of the rules of discovery. As noted by the Supreme Court in *Abtrax:*

Discovery rules are designed 'to further the public policies of expeditious handling of cases, avoiding stale evidence, and providing uniformity, predictability and security in the conduct of litigation.' (citations omitted.) *Id.* at 512, 655 *A.*2d 1368.

The policies of uniformity, predictability and security are conspicuously undermined by plaintiff's conduct. Plaintiff took advantage of her position of trust to avail herself of confidential materials for purely self-serving reasons. Her conduct becomes even more egregious when considering that she was acting as an attorney with an ethical duty of loyalty to her client/employer *RPC* 1.13; *RPC* 1.6;[6] and a commensurate responsibility to comport herself at all times as an officer of the court. *RPC* 8.4(c).

Plaintiff's conduct was also an act of lawlessness with clear criminal implications. *N.J.S.A.* 2C:20–25 describes the elements of computer theft to include purposely or knowingly and without authorization taking any data from a computer, computer system or computer network. *N.J.S.A.* 2C:20–23(a) defines the term "access" as the retrieval of data from, or otherwise making use of any resources of a computer. *N.J.S.A.* 20:23(h) defines "data" to include information or facts. *N.J.S.A.* 20:23(*l*) defines "data base" as a collection of data. Probable cause, as a prerequisite to the lawful issuance of criminal process, exists if the facts and circumstances known would cause a prudent man to have a well grounded suspicion that a crime had been committed and that the suspect probably committed it. *Wildoner v. Borough of Ramsey*, 162 *N.J.*

---

[6] Although RPC 1.6(c)(2) permits a lawyer to reveal a client's confidential information to the extent reasonably necessary to establish a claim in a controversy between the lawyer and the client, plaintiff's conduct preceded the existence of an actual controversy.

375, 744 *A.*2d 1146 (2000); *State v. Waltz,* 61 *N.J.* 83, 293 *A.*2d 167 (1972). Plaintiff's deposition testimony provides a sufficient basis to find probable cause as to a violation of *N.J.S.A.* 2C:20–25. There is no question that plaintiff's appropriation of these documents was a knowing, unauthorized act carried out for the specific purpose of advancing her contemplated legal claim against defendant.

Her actions also showed a startling disregard for the privacy rights of her fellow employees. Both the Janick memorandum and the computer generated employee information lists contained personally sensitive information unmistakably intended for internal company use. In the course of oral argument plaintiffs counsel acknowledged that the employees mentioned therein had a reasonable expectation of privacy. Plaintiff, who now stands before this court seeking vindication of her legal rights, showed a callous disregard for the rights of others and an unflinching willingness to subordinate their interests in order to serve her needs.

Notwithstanding the court's emphatic condemnation of plaintiff's conduct, the question remains as to what should be the court's role in policing these types of pre-litigation activities. As noted earlier, the policies underpinning the rules of discovery support the imposition of some type of judicial sanction. The extent and scope of the sanction triggers different concerns. Defendant argues for the dismissal, with prejudice, of plaintiff's complaint. In *Abtrax* the court had a clear source of authority for the imposition of sanctions. *R.* 4:23–2(b) outlines a menu of sanction options, including "dismissing the action or proceeding or any part thereof." However, even though such authority existed, the Court cautioned that:

> In respect of the ultimate sanction of dismissal, this Court has struck a balance by instructing courts to impose that sanction 'only sparingly.' (citations omitted) 'The dismissal of a party's cause of action, with prejudice, is drastic and is generally not to be invoked except in those cases in which the order for discovery goes to the very foundation of the cause of action, or where the refusal to comply is deliberate and contumacious.' *Id.* at 514, 655 *A.*2d 1368.

This court has an inherent aversion to any final judgment not based on the merits of a case. The public's confidence in the fair resolution of civil disputes is based on the principle that a rational, unbiased process, where the parties have an opportunity to fully present their evidence, will produce a just result. Final disposition based on procedural irregularities is inconsistent with this legitimate public expectation. Furthermore, plaintiff's conduct in this case does not involve a direct frontal assault on the court's authority. *Abtrax, Supra,* (litigant's refusal to comply with discovery orders); *Perna v. Electronic Data Systems, Corp.,* 916 *F.Supp.* 388 (D.N.J.1995), (litigant's unlawful removal of documents from opposing counsel's briefcase during lunch-break at a document production session). In those circumstances, courts have not hesitated to impose the ultimate sanction of dismissal with prejudice. The facts at bar concern conduct which, if left unaddressed, indirectly compromises the integrity of the judicial process. In this light, this court is satisfied that plaintiff's conduct does not warrant the dismissal of her cause of action with prejudice.

However, plaintiff cannot expect to carry on in this case with impunity. Her conduct demands some type of judicial action aside from strong disapproving language. Toward this end, this court will look for guidance to the policy foundation of the constitutionally based exclusionary rule.

This court is mindful that the United States Supreme Court in *United States v. Janis,* 428 *U.S.* 433, 96 *S.Ct.* 3021, 49 *L.Ed.*2d 1046 (1976), considered and rejected the creation of a "civil" version of the exclusionary rule. The facts in *Janis* concerned evidence seized pursuant to a search warrant issued by a state criminal court. The warrant was subsequently quashed. Thereafter, the defendant filed a civil claim against the United States seeking a tax refund. The government counterclaimed for unpaid balance of assessment and other taxes alleged by the Internal Revenue Service to be due and owing. The government sought to introduce the illegally obtained state evidence. The civil plaintiff

moved to bar the admissibility of the evidence based on the previous state court ruling. Justice Blackmun, writing for a majority of the Court held that:

.. exclusion from federal civil proceedings of evidence unlawfully seized by a state criminal enforcement officer has not been shown to have a sufficient likelihood of deterring the conduct of the state police so that it outweighs the societal costs imposed by the exclusion. This Court, therefore, is not justified in so extending the exclusionary rule. *Id.* 428 *U.S.* at 453, 96 *S.Ct.* at 3031.

Thus, the unmistakable concern of the Court was the attenuation of the cause and effect relationship between exclusion of the evidence as a deterrence to state police misconduct. I am satisfied that the legal and factual circumstances of this case are sufficiently distinct. The *Janis* holding does not preempt the present examination by this court.

In *State v. Curry,* 109 *N.J.* 1, 532 *A.*2d 721 (1987) our Supreme Court held that the application of the exclusionary rule in a New Jersey Court would not serve the goal of deterring police misconduct which occurred in a foreign jurisdiction in cases where the police's actions were deemed acceptable in that foreign state. In reaching this decision, the Court cited with approval the holding by the Alaska Court of Appeals in *Pooley v. State,* 705 *P.2d* 1293 (Ct.App.1985).

[T]he exclusionary rule has a two-fold purpose: to deter illegal police conduct and to relieve the courts from being compelled to participate in illegal conduct. Neither goal would be served by exclusion of the evidence *** since [foreign] authorities would not (and indeed, should not) be deterred from engaging in conduct which is legal in their state, and admission of the evidence in [the forum state] would not mean placing the judicial imprimatur on lawlessness. *State v. Curry,* 109 *N.J.* at 11, 532 *A.*2d 721, citing *Pooley v. State,* 705 *P.2d* 1293, 1303 (Ct.App.1985).

Federal trial courts have recognized an "inherent equitable power" authorizing the exclusion of evidence improperly obtained outside the discovery process. *Fayemi v. Hambrecht And Quist, Inc.,* 174 *F.R.D.* 319 (S.D.N.Y.1997); *Smith v. Armour Pharmaceutical Co.,* 838 *F.Supp.* 1573 (S.D.Fla.1993). In *Fayemi* the court confronted a remarkably similar situation. Plaintiff brought a race, national origins, and disability discrimination action against his former employer. Following his termination, plaintiff furtively

removed from a computer a disk his supervisor kept in a desk drawer. The court found a sufficient basis to preclude plaintiff/employee from using this evidence at trial.

> Pursuant to this inherent authority, a court must be able to sanction a party that seeks to introduce improperly obtained evidence; otherwise the court, by allowing the wrongdoer to utilize the information in litigation before it, becomes complicit in the misconduct. *Id.* at 324.

In *Smith*, the court expressed similar reasoning in the form of a poignant hypothetical question.

> Suppose a plaintiff burglarized a defendant's premises and secured privileged documents. Could one seriously contend that a court could not prohibit the use of those documents in the proceeding before it simply because the documents were not obtained through the court's discovery process? *Id.* at 1578.

Against this analytical backdrop this court will craft a judicial response to plaintiff's pre-litigation conduct. The sanction imposed must have three distinct guiding principles. First, it must serve to promote and safeguard the previously identified policies of uniformity, predictability and security which form the foundation for the efficient and orderly administration of civil disputes. Second, it must purge the taint this evidence would bring to the judicial process if permitted to become a part of plaintiff's arsenal of proofs. Third, it must deter this type of unilateral, self help, lawless behavior.

Exclusion of these documents at trial serves all three policy goals. First, it insures that evidential materials will be gathered in a uniform orderly manner, with appropriate judicial supervision to limit or outright prevent unwarranted disclosure of confidential information. Second, it unequivocally disavows any judicial entanglement in the manner the evidence was procured, thereby negating even the implication that the court, by admitting the evidence, is placing a judicial imprimatur on otherwise lawless conduct. Third, it provides the *sine quanon* of the exclusionary rule, the deterrence of lawlessness by denying this plaintiff the fruits of her misconduct. This would also have a general deterrent affect by serving notice on all would be litigants that this manner of gathering evidence will not be countenanced.

Plaintiff argues that to suppress this evidence would frustrate the pursuit of the truth by keeping highly probative evidence from the fact finder.

Once one reads the [Janick] memo it also quickly becomes apparent why they [defendants] are upset. Despite defense protestations that this is an irrelevant document with no bearing upon Ms. Tartaglia's case, [the Janick memo] is a veritable smoking gun of the facts that attorneys on [sic.] the highest level of Paine Webber engaged in retaliation against their subordinates, lie or encourages lying when the facts prove difficult for them, and have their misconduct tolerated by the head of the legal division, i.e., the defendant Herb Janick. (Plaintiff's Brief in Opposition to Order to Show Cause, at 4.)

On its face, the Janick memorandum appears to be relevant to plaintiff's allegations that she was the victim of disparate and excessive disciplinary measures when compared to the treatment received by other similarly situated employees at Paine Webber. *N.J.R.E.* 402. However, a determination of relevancy alone is not dispositive of the issues raised herein. The general rule is that all evidence relevant to an issue in a controversy should be admitted unless its admission would transgress some paramount policy of society and the law. *Reinhart v. E.I. Dupont DeNemours,* 147 *N.J.* 156, 685 *A.*2d 1301 (1996); *Reilley v. Keswani,* 137 *N.J.Super.* 553, 350 *A.*2d 74 (App.Div.1975). This court has previously identified three separate guiding principles which form the essence of such a paramount public policy.

Plaintiff also argues for this court to treat these documents as "after-acquired evidence" within the meaning of the United States Supreme Court decision in *McKennon v. Nashville Banner Publishing Company,* 513 *U.S.* 352, 115 *S.Ct.* 879, 130 *L.Ed.*2d 852 (1995). Plaintiff's reliance on *McKennon* is misplaced. There defendant attempted to use the plaintiff's misconduct as a basis for justifying the termination of employment. The court held that since plaintiff's misconduct was not known at the time the termination decision was made, defendant's attempt to "bootstrap it" as a valid basis for termination was a mere pretext. There is nothing in the case to support that the *McKennon* Court considered and rejected the imposition of sanctions. The other federal case cited by plaintiff, *Miller v. Beneficial Management Corp.,* 855 *F.Supp.*

691 (D.N.J.1994), also involved defendant moving for summary judgment arguing that the improperly "after-acquired evidence" should be considered as an independent basis for termination. As in *McKennon*, the *Miller* court properly rejected such a circuitous argument. These decisions do not address the issued raised by this application, nor respond to this court's public policy concerns.

Finally, although not raised by the parties, the court must consider the Doctrine of Inevitable Discovery. This doctrine recognizes an exception to the constitutionally based exclusionary rule when the State can show that:

(1) proper, normal and specific investigatory procedures would have been pursued in order to complete the investigation of the case; (2) under all of the surrounding relevant circumstances the pursuit of these procedures would have inevitably resulted in the discovery of the evidence; and (3) the discovery of the evidence through the use of such procedures would have occurred wholly independently of the discovery of such evidence by unlawful means. *State v. DeLane*, 207 *N.J.Super.* 45, 51, 52, 503 *A.2d* 903 (App.Div.1986), citing *State v. Sugar*, 100 *N.J.* at 238, 495 *A.2d* 90.

This court has no doubt that the documents in question would have fallen under the purview of plaintiff's omnibus request for production of documents. In fact, defendant's discovery of plaintiff's actions only came to light when she produced the documents in response to defendant's own request for production of documents. Thus, under the Doctrine of Inevitable Discovery, plaintiff's pre-litigation self help measures appear to have resulted in no actual harm to defendant. If the court's focus was limited to a determination of actual harm to defendant, then this entire episode is reduced to "much to do about nothing." However, plaintiff's conduct goes far beyond its impact on defendant. Missing from a strict application of the Inevitable Discovery Doctrine are the public policy concerns which form the foundation of this decision (1) uniformity, predictability and security in the efficient and orderly administration of civil disputes; (2) preservation of the integrity of the judicial process; (3) deterrence of unilateral, self help, lawless behavior.

A judicial policy that ignores a party's pre-litigation lawlessness in connection with the gathering of evidence and further permits

such tainted evidence to be admitted at trial merely because the evidence would have been otherwise admissible if the offending party had adhered to the rule of law, corrupts the judicial process and converts the court into an accomplice after the fact. On the other hand, a judicial policy that deters such lawless conduct by excluding such tainted evidence from being admitted at trial, thereby unequivocally condemning the actions of the offending party, preserves the integrity of the judicial process and promotes proper pre-litigation evidence gathering. Therefore, this court holds that the Inevitable Discovery Doctrine does not bar the exclusion of evidence in a civil case when such evidence was obtained by the offending party through lawless pre-litigation activities.

Defendant's request for an award of counsel fees incurred in connection with the prosecution of this order to show cause is denied. This court finds no legal authority upon which to base such a sanction. Since plaintiff's misconduct is limited to pre-litigation activities, the provisions of *R.* 4–23–1(c) do not apply. This matter also falls outside of the specific grounds enumerated in *R.* 4:42–9.

## CONCLUSION AND RECAPITULATION

This court holds that plaintiff's lawless pre-litigation evidence gathering activities warrant the sanction of excluding the evidence so gathered from being admitted at the time of trial. This court finds authority for the imposition of this sanction in three basic policy principles: (1) uniformity, predictability and security in the efficient and orderly administration of civil disputes; (2) preservation of the integrity of the judicial process; and (3) deterrence of unilateral, self help, lawless behavior in the gathering of pre-litigation evidence.

Plaintiff is hereby ordered to forthwith destroy all copies of the December 5, 1997, memorandum to file authored by defendant Herbert F. Janick and the computer generated lists containing employee information compiled by Paine Webber's Human Re-

sources Department from January 1, 1992 to May 2, 1998. Plaintiff is further permanently enjoined from revealing the contents of these documents to anyone in any way and for any reason.