794 A.2d 816 (2002)
350 N.J. Super. 142
Maria TARTAGLIA, Plaintiff-Appellant,
v.
PAINE WEBBER, INC. and Herb Janick, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued November 27, 2001.
Decided April 3, 2002.
*817 Bennet D. Zurofsky, Newark, argued the cause for appellant (Reitman Parsonnet, attorneys; Mr. Zurofsky, on the brief).
Robert H. Bernstein, Newark, argued the cause for respondents (Epstein Becker & Green, attorneys; Mr. Bernstein, of counsel; Donald S. Barth, on the brief).
Before Judges STERN, EICHEN and LINTNER.
The opinion of the court was delivered by STERN, P.J.A.D.
Pursuant to leave granted, plaintiff appeals from an order requiring her to destroy copies of computer generated information taken from defendant Paine Webber, and enjoining her from revealing the contents and using them during the trial. As detailed in the trial court's reported opinion, Tartaglia v. Paine Webber, Inc., 342 N.J.Super. 182, 184-87, 775 A.2d 786 (Law Div.2001), the material was obtained by plaintiff, an attorney formerly employed by Paine Webber, prior to her termination and, thereafter, through a co-worker for use in this contemplated litigation. Plaintiff appears to have obtained the material in anticipation of her termination and the Law Against Discrimination ("LAD") suit concerning the termination. She contends that the information she obtained supports her LAD claims.
Although believing that the "documents in question would have fallen under the purview of plaintiff's omnibus request for the production of documents" and "the Doctrine of Inevitable Discovery," the trial court concluded that "plaintiff's conduct goes far beyond its impact on defendant," 342 N.J.Super. at 194, 775 A.2d 786, and that:
[a] judicial policy that ignores a party's pre-litigation lawlessness in connection with the gathering of evidence and further permits such tainted evidence to be admitted at trial merely because the evidence would have been otherwise admissible if the offending party had adhered to the rule of law, corrupts the judicial process and converts the court into an accomplice after the fact.

[342 N.J.Super. at 194-95, 775 A.2d 786.]
The judge further concluded that "a judicial policy that deters such lawless conduct by excluding such tainted evidence from being admitted at trial ... preserves the integrity of the judicial process and promotes proper pre-litigation evidence gathering," id. at 195, 775 A.2d 786, and "that the Inevitable Discovery Doctrine does not bar the exclusion of evidence in a civil case when such evidence was obtained by the offending party through lawless pre-litigation activities." Ibid. He therefore held "that plaintiff's lawless pre-litigation evidence gathering activities warrant the sanction of excluding the evidence so gathered from being admitted at the time of trial," ibid., in this LAD action against defendants, her former employer and supervisor at work.
Before us, plaintiff argues that "no evidence should be suppressed in the absence of `substantial prejudice' to the defendants," that her allegedly wrongful conduct was itself protected by the LAD, and that "evidence that will inevitably be discovered should not be suppressed." While we have much sympathy for the policy the trial judge tried to support (and particularly the integrity of the judicial process and the need to deter), we find it inconsistent with existing judicial philosophy which permits a search for the truth in the underlying litigation and leaves defendant with *818 other remedies which might be available independent of the suppression of relevant evidence. This is especially true in a situation in which the judge found that "under the Doctrine of Inevitable Discovery, plaintiff's pre-litigation self help measures appear to have resulted in no actual harm to defendant." Id. at 194, 775 A.2d 786.

I.
Plaintiff is an attorney at law admitted to practice in New York as well as New Jersey. Defendant Paine Webber employed her as an attorney in its legal department from August 1992 until April 1998 when it terminated her employment.[1] Thereafter, in April of 1999, plaintiff commenced this action alleging, among other things, violations of the LAD. Specifically, she alleged that she was fired because
of retaliation for her assertion and support of various internal complaints within the legal department regarding such matters as sex harassment, racial discrimination, gender discrimination, non-compliance with wage and hour laws, non-compliance with subpoenas and other orders served upon the company. Plaintiff also allege[d] that she was discriminated against due to her psychiatric disability which [was] aggravated as a result of defendant's alleged misconduct.
[342 N.J.Super. at 184, 775 A.2d 786.]
On October 19, 1999, plaintiff produced documents in response to defendants' request for the production of documents. Among the documents produced were "privileged and/or confidential documents respecting the employment of other Paine Webber attorneys and employees." With regard to those documents, defendant Herbert Janick submitted a certification in support of defendants' application for an order to show cause seeking to have the documents returned and the complaint dismissed. As the trial judge developed in his opinion, Janick certified that a personnel memorandum, dated December 5, 1997, produced by plaintiff was labeled "confidential attorney work product material" and was obtained without permission. Janick further certified that the memo was filed in his computer in an area only accessible by him and Paine Webber's computer systems administrator.
During plaintiff's deposition, plaintiff was asked whether such a memo that had nothing to do with plaintiff was "fair game for everyone in the department." She responded in the affirmative if it was on the shared system from which she asserts the memorandum was taken.
In his reported opinion, the trial judge suppressed the December 1997 personnel memorandum. He also suppressed two computer generated lists of terminated and active employees, one of which was apparently obtained by plaintiff through a friend and former co-worker after plaintiff's termination. These documents were also generated by the Paine Webber Human Resources Management System and stored on its computer. After his decision was rendered, the trial judge clarified that *819 plaintiff could not use the evidence even though it may have become available in the ordinary course of discovery.

II.
Plaintiff contends that no evidence should be suppressed in the absence of "substantial prejudice" to defendants. Relying on cases like Manorcare Health Services, Inc. v. Osmose Wood Preserving, Inc., 336 N.J.Super. 218, 764 A.2d 475 (App.Div.2001), she urges that the "substantial prejudice" standard sensibly prevents a party from gaining an unfair advantage through wrongful conduct and that she has not gained any "unfair advantage" through her allegedly wrongful conduct. Defendants counter that the trial judge's order was "just and reasonable" and can in no way be said to constitute a reversible "abuse of discretion."
Manorcare dealt with the spoliation of evidence in which the defendant was permitted to inspect the fire resistant plywood in question but was "denied notice of the removal and replacement of the damaged plywood and thereby lost the ability to monitor the removal and replacement phase." Id. at 221, 764 A.2d 475. We held that the appropriate sanction was to bar the evidence obtained during the removal and replacement stage but not to dismiss the complaint. Ibid. In so holding, we noted that the prejudice in the case was apparent, as defendant's experts were not able to observe the removal and repair work themselves, despite the fact that plaintiff produced reports and videotapes concerning the work that was done. Id. at 230, 764 A.2d 475.
We agree with plaintiff that defendants in Manorcare were "prejudiced" by the lost opportunity to inspect and observe critical evidence, whereas in this case they had all the disputed evidence in their possession at all times. Stated differently, plaintiff did not destroy or deprive defendants of any evidence or any of their file contents. Nor is it clear how plaintiff may have obtained some "unfair advantage" in the litigation. As noted, defendants were at all times in the possession of their documents. Cf. Rosenblit v. Zimmerman, 166 N.J. 391, 766 A.2d 749 (2001) (no spoliation claim where plaintiff had copy of record defendant destroyed in contemplation of malpractice litigation).
Moreover, evidence illegally obtained in violation of the Constitution is generally deemed inadmissible only in a criminal prosecution and only because of the illegal conduct of government officials. See, e.g., Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); State v. Carty, 170 N.J. 632, 657, 790 A.2d 903 (2002); State v. Novembrino, 105 N.J. 95, 519 A.2d 820 (1987). See also United States v. Janis, 428 U.S. 433, 459-60, 96 S.Ct. 3021, 3034-3035, 49 L.Ed.2d 1046 (1976) (exclusionary rule not extended to preclude admission of evidence seized by a State law enforcement officer in a federal civil action). The goal of the exclusionary rule is to prevent "insolence in office" and "deter" government officers from violating the law. State v. Novembrino, supra, 105 N.J. at 165, 519 A.2d 820 (Handler, J. concurring); State v. Bisaccia, 58 N.J. 586, 591, 279 A.2d 675 (1971) (Weintraub, C.J.); State v. Calcagno, 120 N.J.Super. 536, 537, 295 A.2d 366 (App.Div.1972) (result of search by employer's private investigators of employer admissible because "[t]he cloak of protection furnished by the Fourth Amendment is directed against official arrogance and insolence in office by public agents"). See also State v. Carty, supra, 170 N.J. at 657, 790 A.2d 903 (purpose of exclusionary rule is "to deter police conduct and to preserve the integrity of the court," quoting State v. Johnson, 118 N.J. 639, 651, 573 A.2d 909 (1990)). Accordingly, *820 illegally obtained evidence, which would be subject to suppression if secured by a government official, need not be suppressed when obtained by a private citizen acting on his or her own behalf. See, e.g., Mercer v. Parsons, 95 N.J.L. 224, 112 A. 254 (E & A 1920) (wife's illegal interception of husband's mail did not preclude its admission into evidence); State v. Calcagno, supra (evidence obtained from workplace drawer by employer's investigators admissible in criminal prosecution); DelPresto v. DelPresto, 97 N.J.Super. 446, 235 A.2d 240 (App.Div. 1967) (reversing suppression of evidence obtained by illegal entry into husband's paramour's house in matrimonial proceeding).
The policy objectives behind the exclusionary rule, designed to deter police and government officers from infringing on constitutional rights of individuals, are not achieved by suppressing relevant evidence in the present dispute involving private parties. It has been well settled that our mission, as a judiciary, is to limit the exclusion of probative evidence and to promote a search for the truth. See, e.g., State v. Briley, 53 N.J. 498, 506, 251 A.2d 442 (1969). Moreover, even when evidence illegally obtained by the police violates the Fourth Amendment or State Constitution, see N.J. Const. art. I, ¶ 7, it is nevertheless admissible if "inevitably discoverable," see e.g., Nix v. Williams, 467 U.S. 431, 444, 104 S.Ct. 2501, 2509, 81 L.Ed.2d 377 (1984); State v. Sugar, 100 N.J. 214, 238-40, 495 A.2d 90 (1985), and there is no other basis for exclusion. See also Fox Searchlight Pictures, Inc. v. Paladino, 89 Cal.App. 4th 294, 106 Cal.Rptr.2d 906, 920 (2d Dist. 2001) ("fundamental fairness to the plaintiff requires the plaintiff be allowed to make such a limited disclosure of the former employer's secrets to her own attorneys to the extent necessary to prepare a claim for wrongful discharge").
In this case it is disputed whether plaintiff unlawfully obtained the confidential memorandum or took it from a computer to which she had authorized access. Plaintiff claims that the memo was on a shared system and, therefore, it is reasonable to conclude that it was "innocently acquired" and admissible on that basis alone. See Kempcke v. Monsanto Co., 132 F.3d 442 (8th Cir.1998). Defendants assert that the material was acquired unlawfully. The factual dispute need not be resolved in this context, although it may be relevant to plaintiff's credibility. Independent of the Fourth Amendment values discussed, we can find no judicial policy which requires exclusion of the contested evidence in this case. In fact, defendant points to no statute or court rule which trumps the judicial policy which favors the admission of all probative evidence.[2]See Sackler v. Sackler, 15 N.Y.2d 40, 44, 255 N.Y.S.2d 83, 203 N.E.2d 481 (1964) (illegal entry did not require suppression of evidence obtained because judicial policy is to promote introduction of relevant evidence; "the New York Legislature, when it has found necessity for outlawing evidence because it was secured by particular unlawful means, has provided specific statutory prohibitions such as those against the use of proof gotten by illegal eavesdropping"); N.J.S.A. 2A:84A-17 to -44 (regarding privileges and the Rules of Evidence). In any event:
As a general rule, our legal system does not attempt to do justice incidentally *821 and to enforce penalties by indirect means. A judge does not attempt, in the course of a specific litigation, to investigate and punish all offenses which incidentally cross the path of that litigation. Such a practice would offend our system of law in several ways. (1) It amounts to trying a violation of law without the proper complaint and process which are essential for its correct investigation. (2) Determination of incidental violations jeopardizes the primary litigation by delaying, interrupting, confusing and sometimes frustrating it. (3) It does all of this unnecessarily and gratuitously; the persons harmed by the supposed incidental violations have direct means of redress available and should not be allowed to attend to their complaints in this indirect and possibly tardy manner. (4) The judicial rules of evidence were never meant to be used as an indirect method of punishment. To punish the incidental violation by rendering evidence obtained thereby inadmissible in the primary litigation is to enlarge improperly the fixed penalty of the law, that of fine or imprisonment, by adding to it the forfeiture of some civil right through loss of the means of proving it.
The incidental illegality is by no means condoned. It is merely ignored in this litigation.
For these reasons, it has long been established that the admissibility of evidence is not affected by the illegality of the means through which the party has obtained the evidence.
[8 Wigmore on Evidence § 2183 (McNaughton rev.1961).][3]
See also P.A. Agabin, Annotation, Admissibility, in Civil Case, of Evidence Obtained by Unlawful Search and Seizure, 5 A.L.R.3d 670, 674 (1966) ("[t]aking the view that the prohibitions of the Fourth Amendment run only against governmental actions, the courts in most of the few cases where the issue has been raised have held that evidence would not be excluded in a civil case merely because it had been obtained by an allegedly unlawful search or seizure carried out by one other than a governmental agent"); 12A Fed. Proc., L.Ed. § 33:603 (1988) ("[a]s for civil proceedings, the Supreme Court has noted that it has never applied the exclusionary rule to exclude evidence in such actions"); Bernard A. Nigro, Jr., Note, The Exclusionary Rule in Administrative Proceedings, 54 Geo. Wash. L.Rev. 564, 565 (1986) ("[t]he Supreme Court has held that the exclusionary rule applies in all federal and state criminal trials, but never in purely civil cases").
We reverse the suppression order in this civil dispute between private parties involving no governmental or State action. We find no basis in these circumstances to suppress any evidence which tends to preclude development of the true and relevant facts, particularly when the documents were inevitably discoverable.[4]
We do not, however, conclude that the documents are admissible in the cause. We hold only that they should not be suppressed based on the "judicial policy" advanced by the trial court and that all issues concerning the admissibility of the documents based on claims such as relevancy, work product, and privilege must be explored in the traditional sense. The trial *822 judge has already determined that there is no "privilege" regarding the December 5, 1997 Janick memorandum. Defendants did not seek leave to cross-appeal from the trial judge's ruling that the memorandum was "not privileged as either an attorney-client communication under N.J.R.E. 504 or under the work product doctrine as material prepared in anticipation of trial," 342 N.J.Super. at 185 n. 4, 775 A.2d 786, and we do not address that issue.
The order under review is reversed, and the matter is remanded to the Law Division for further proceedings consistent with this opinion.
NOTES
[1] In her brief plaintiff includes a "Statement of Facts Alleged by Plaintiff" in order "to provide the Court with a fuller understanding of what Ms. Tartaglia hopes to prove at trial than that which is provided by her Complaint." Defendants object to the inclusion of this "unsubstantiated set of allegations," which is not part of the record and is submitted in violation of the Rules governing appellate practice. While we agree with defendants that the facts are neither substantiated nor developed of record, we refer to some of them in order to understand the background presented in connection with the legal issue before us. We add that we will assume all disputed factual contentions as presented by defendants in light of our disposition.
[2] Defendants contend that plaintiff violated RPC 1.6(a), 1.7(b), 8.4(a), 8.4(b) and 8.4(c), and that this misconduct "undermined the uniformity, predictability and security required for the efficient and orderly administration of civil disputes." However, "under existing New Jersey law, ... evidence obtained in violation of a disciplinary rule need not be suppressed." See State v. CIBA-GEIGY Corp., 247 N.J.Super. 314, 316, 589 A.2d 180 (1991). See also Baxt v. Liloia, 155 N.J. 190, 714 A.2d 271 (1998).
[3] We do not preclude the imposition of other sanctions or prevent defendants from attempting to pursue other remedies which they feel appropriate with respect to plaintiff's alleged wrongdoing if it appears at the conclusion of the case that a law or rule was violated.
[4] The judge expressly rejected a claim that the December 5, 1997 Janick memorandum was "privileged." Id. at 185 n. 4, 714 A.2d 271.