**RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0070-21

C.M.C.,[1]

    Plaintiff-Respondent,

v.

M.J.C.,

    Defendant-Appellant.

_____

Submitted October 12, 2022 – Decided October 26, 2022

Before Judges Messano and Rose.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Middlesex County, Docket No. FV-12-2274-21.

Law Office of Jarred S. Freeman, LLC, attorney for appellant (Jarred S. Freeman, on the brief).

Musto & Alevras, attorneys for respondent (George Scott Alevras, on the brief).

---

[1] We use initials in accordance with Rule 1:38-3(d)(10), and pseudonyms for ease of reference.

PER CURIAM

Defendant M.J.C. appeals from an August 6, 2021 final restraining order (FRO) issued in favor of his daughter, plaintiff C.M.C., pursuant to the Prevention of Domestic Violence Act, N.J.S.A. 2C:25-17 to -35 (PDVA). A Family Part judge entered the FRO after finding defendant committed the predicate act of simple assault, N.J.S.A. 2C:12-1(a), and N.J.S.A. 2C:25-19(a)(2), on June 1, 2021, and an FRO was necessary to protect plaintiff from future acts of domestic violence. Defendant contends the trial judge erroneously admitted plaintiff's surreptitiously recorded video recording that depicted the incident, and wrongly determined plaintiff established the need for final restraints. Having considered defendant's contentions in view of the record and the governing law, we disagree and affirm.

I.

The facts were established at the one-day bench trial, during which both parties were represented by counsel. Plaintiff testified and introduced into evidence her video recording of the June 1, 2021 incident, and text messages between the parties on June 2, 2021. Defendant testified on his own behalf and called as witnesses his daughter, J.C. (Jayne), and a family friend, D.R. (Donald).

A-0070-21

According to the undisputed trial record, plaintiff was twenty-three years old at the time of the incident and had lived with defendant until the prior year. At some point, plaintiff's mother had committed suicide and her father had remarried. The incident that precipitated the filing of the domestic violence complaint occurred when the parties, defense witnesses, and other family members were vacationing in California. In the late afternoon of June 1, 2021, plaintiff and defendant were playing pool in the family's rental home. The parties had been drinking all day and argued about plaintiff's relationship with her paternal aunts.

Plaintiff testified defendant was "extremely angry" and "out of nowhere, started yelling about [having been] raped by his father." At that point, plaintiff placed her cellphone in her pocket and began recording their conversation. Over defense counsel's objection, the video recording was admitted into evidence and played in court. Although the video is unclear, the audio captured the parties' conversation.[2] During direct examination, plaintiff narrated some segments of the recording that were difficult to discern.

---

[2] We have reviewed the recording, which was provided by plaintiff in her responding appendix. The recording spans about thirteen minutes.

A-0070-21

For example, following an escalating barrage of insults and derogatory remarks heard on the recording, plaintiff told defendant to "back up." During her testimony plaintiff clarified that she said, "[B]ack up, you're stepping on me like you're going to hit me." Minutes later, plaintiff repeatedly told defendant, "You should go." Plaintiff testified she made these statements because defendant "continue[d] coming at [her]." Ultimately, scuffling noises are captured on the recording, with plaintiff screaming multiple times, stating: "You just put your hands on me. . . . This is why mom killed herself, it's because of you."

Plaintiff told the trial judge she sought an FRO because she was "deeply afraid of [defendant] and who he is and what he could do to [her]." Plaintiff testified she had trouble sleeping, stating: "I constantly have dreams about my father choking me and coming to kill me." At the time of trial, the parties lived within a one-minute walk of each other.

Plaintiff also recounted past incidents of domestic violence, commencing in 2002, when she was five years old.[3] Three years later, in 2005, when her parents were in the process of divorcing, defendant "punched a wall" and "threw

---

[3] The judge interrupted plaintiff's testimony but later summarized her complaint about this incident, stating defendant had grabbed plaintiff by the bottom lip and pulled her out of the bathtub.

A-0070-21

a vacuum cleaner, which hit [plaintiff's] spine." In 2007, defendant punched the door of his pickup truck after plaintiff spilled soda in the truck. In 2017, defendant dragged plaintiff by the hair, held her down, and struck her with an open hand. Since 2018, defendant has disparaged plaintiff by stating she is "a compulsive liar"; "an alcoholic"; and "a drug addict." Defendant has hit her in the back of the head, claiming he was only joking. Defendant also bent back her fingers "to the point where [she is] in pain", stating: "[D]on't marry a man whose hands are smaller than yours because they're weaker."

On cross-examination, plaintiff acknowledged she had no photographs depicting any injuries caused by defendant. Plaintiff claimed defendant was "skilled at making sure marks don't appear."

Jayne and Donald both testified they saw plaintiff after the incident but did not notice any signs of injury. Jayne testified plaintiff held a grudge against defendant. Donald claimed plaintiff went "off her meds" the day before the incident.

Not surprisingly, defendant denied plaintiff's account of the incident. Instead, he claimed plaintiff swung a pool stick at him from across the room. Defendant also denied all prior acts of domestic violence. He claimed plaintiff

5

"was thrown out" of his house "because of her drug abuse, and her alcohol abuse, and her constant manipulation and lying to [him]."

Defendant asserted he sought an FRO against plaintiff because he wanted her "to get help" so she did not "wind up like her mother." Defendant said he feared plaintiff would abuse drugs and alcohol and "wind up dead." He claimed he was afraid of plaintiff "to an extent" because she was "on a mission to destroy [him] for some reason."

After she returned to New Jersey, on June 5, 2021, plaintiff filed her domestic violence complaint in Sayreville Municipal Court, alleging defendant assaulted her four days prior in California. Plaintiff was issued a TRO. Defendant filed a cross-complaint, asserting plaintiff assaulted and harassed him during the same incident. Defendant also alleged plaintiff damaged his home on prior occasions. He was issued a cross-TRO. On June 23, 2021, plaintiff amended her complaint, asserting the domestic violence history summarized above.

Immediately following summations, the trial judge issued an oral decision. Referencing the testimony of each witness, the trial judge credited plaintiff's account and found her video recording was "the best evidence" of the incident. The judge concluded defendant "grabbed [plaintiff], pushed her, [and]

6

put his hand around her neck as she said." The judge thus found plaintiff proved the predicate act of assault. Addressing whether plaintiff established the need for an FRO, the judge specifically acknowledged the prior domestic violence history between the parties and concluded restraints were necessary to protect plaintiff from further abuse. Accordingly, the judge granted plaintiff's application for an FRO. This appeal followed.[4]

On appeal, defendant raises the following points for our consideration:

POINT I

THE TRIAL COURT ERRED BY ISSUING THE [FRO] BECAUSE THE COURT IMPROPERLY ADMITTED INTO EVIDENCE[], AND BASED ITS DECISION ON, AN ILLEGALY OBTAINED RECORDING.

A. The trial court erred by applying New Jersey law when deciding the admissibility of the recording because it was made when both parties were in California.

POINT II

THE TRIAL COURT ERRED BY GRANTNG A[N] [FRO] BECAUSE IT IS NOT NECESSARY TO PROTECT PLAINTIFF.

---

[4] The trial judge also denied defendant's application for an FRO, dismissed his cross-complaint, and dissolved the cross-TRO. Defendant does not appeal from the denial of his application.

A-0070-21

Our limited scope of review of a trial court's findings is well established. See Cesare v. Cesare, 154 N.J. 394, 411 (1998). "[W]e grant substantial deference to the trial court's findings of fact and the legal conclusions based upon those findings." D.N. v. K.M., 429 N.J. Super. 592, 596 (App. Div. 2013). We will not disturb the court's factual findings and legal conclusions "unless [we are] convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Cesare, 154 N.J. at 412 (quoting Rova Farms Resort, Inc. v. Inv'rs Ins. Co., 65 N.J. 474, 484 (1974)).

Deference is particularly appropriate here, where the evidence is largely testimonial and hinges on a court's ability to make credibility assessments. Cesare, 154 N.J. at 412. It is axiomatic that the judge who observes the witnesses and hears their testimony has a perspective the reviewing court simply does not enjoy. See Pascale v. Pascale, 113 N.J. 20, 33 (1988). We also accord deference to the factual findings of Family Part judges because that court has "special jurisdiction and expertise in family matters." Cesare, 154 N.J. at 413. Conversely, a trial judge's decision on a purely legal issue is subject to de novo review on appeal. Crespo v. Crespo, 395 N.J. Super. 190, 194 (App. Div. 2007).

The entry of an FRO under the PDVA requires the trial court make certain findings, pursuant to a two-step analysis.  See Silver v. Silver, 387 N.J. Super. 112, 125-27 (App. Div. 2006).  Initially, the court "must determine whether the plaintiff has proven, by a preponderance of the credible evidence, that one or more of the predicate acts set forth in N.J.S.A. 2C:25-19(a) has occurred."  Id. at 125.  The trial court should make this determination "in light of the previous history of violence between the parties."  Ibid. (quoting Cesare, 154 N.J. at 402).

Secondly, the court must determine "whether a restraining order is necessary, upon an evaluation of the factors set forth in N.J.S.A. 2C:25-29(a)(1) to -29(a)(6), to protect the victim from an immediate danger or to prevent further abuse."  Silver, 387 N.J. Super. at 127; see also J.D. v. M.D.F., 207 N.J. 458, 476 (2011) (noting the importance of the second Silver prong).  Pertinent to this appeal, these factors include, but are not limited to:  "The previous history of domestic violence between the plaintiff and defendant, including threats, harassment and physical abuse."  N.J.S.A. 2C:25-29(a)(1).  In those cases where "the risk of harm is so great," J.D. 207 N.J. at 488, the second inquiry "is most often perfunctory and self-evident."  Silver, 387 N.J. Super. at 127.

In the present matter, defendant ostensibly challenges the trial judge's findings under the first Silver prong by arguing plaintiff's video recording of

9

their conversation was improperly admitted into evidence. Defendant contends because California law criminalizes the recording of confidential communications absent the consent of all parties to the conversation, and the judge's decision was based on the recording, the FRO should be vacated. We find insufficient merit in defendant's argument, to warrant discussion in a written opinion beyond the following brief comments. R. 2:11-3(e)(1)(E).

Defendant acknowledges no authority supports his argument that a California penal statute[5] should render inadmissible a surreptitiously recorded conversation in a domestic violence trial in New Jersey. We have, however,

---

[5] To support his position, defendant cites a portion of the California Penal Code, which prohibits the intentional recording of confidential communications, "without the consent of all parties." Cal. Penal Code § 632(a). The statute further states "evidence obtained . . . in violation of this section is not admissible in any judicial . . . proceeding." Cal. Penal Code § 632(d). However, defendant fails to cite the following section of the Code, which provides an exception for domestic violence victims:

> Notwithstanding the provisions of this chapter, . . . a victim of domestic violence who is seeking a domestic violence restraining order from a court, and who reasonably believes that a confidential communication made to him or her by the perpetrator may contain evidence germane to that restraining order, may record that communication for the exclusive purpose and use of providing that evidence to the court.

[Cal. Penal Code § 633.6(b).]

A-0070-21

stated in a similar context that "evidence illegally obtained in violation of the Constitution is generally deemed inadmissible only in a criminal prosecution and only because of the illegal conduct of government officials." Tartaglia v. Paine Webber, 350 N.J. Super. 142, 148 (App. Div. 2002). Conversely, here, the recording was made by a private citizen and admitted into evidence during a Family Part proceeding to support her application for an FRO.

Moreover, the Legislature enacted the PDVA "to assure the victims of domestic violence the maximum protection from abuse the law can provide." N.J.S.A. 2C:25-18. In furtherance of that objective, the PDVA expressly authorizes a plaintiff to file a complaint "in a court having jurisdiction over the place where the alleged act of domestic violence occurred, where the defendant resides, or where the plaintiff resides or is sheltered." N.J.S.A. 2C:25-28(a); see also State v. Reyes, 172 N.J. 154, 167 (2002) (recognizing "the specific jurisdictional authorization" set forth in N.J.S.A. 2C:25-28(a), enabling the Family Part to issue a domestic violence restraining order when a plaintiff alleges the predicate act occurred in another state). We conclude the admission of plaintiff's recording during her FRO trial is consonant with the PDVA's objectives and its jurisdictional authorization.

11

Nor are we persuaded the trial judge erroneously determined plaintiff established the need for an FRO. Without expressly referencing the factors enumerated in N.J.S.A. 2C:25-29(a), the judge nonetheless determined plaintiff established a prior domestic violence history between the parties. See N.J.S.A. 2C:25-29(a)(1); see also Cesare, 154 N.J. at 401-02 (noting the PDVA does not require incorporation of all factors but does require evaluation of any prior history of domestic violence). The judge's decision was based, in large part, on his credibility assessment of the parties, specifically finding "[plaintiff]'s testimony rings true," and defendant's testimony "doesn't make sense." Giving deference to those findings, see Cesare, 154 N.J. at 412, we discern no basis to disturb the judge's decision, see D.N., 429 N.J. Super. at 596.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

12

A-0070-21