**United States Court of Appeals**
**FOR THE EIGHTH CIRCUIT**

_____

No. 97-1423

_____

| | |
|---|---|
| Darrell Kempcke, | * |
| | * |
| Plaintiff - Appellant, | * |
| | * |
| | *   Appeal from the United States |
| v. | *   District Court for the |
| | *   Eastern District of Missouri. |
| Monsanto Company, | * |
| | * |
| Defendant - Appellee. | * |

_____

Submitted:  October 21, 1997
Filed:    January 6, 1998

_____

Before FAGG, WOLLMAN, and LOKEN, Circuit Judges.

_____

LOKEN, Circuit Judge.

Monsanto Company fired Darrell Kempcke when he refused to return company documents that he believed reflected a pattern of age discrimination against himself and others.  Kempcke now appeals the grant of summary judgment dismissing his age discrimination and retaliation claims under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-34, and the Missouri Human Rights Act, Mo. Ann. Stat. §§ 213.010 *et seq*.  We reverse.

We view the facts in the light most favorable to Kempcke. At the time in question he was a forty-eight year old senior training manager in Monsanto's Global Operations Division. Kempcke had been denied three manager positions after turning forty, the explanation being that Monsanto reserved these positions for "young promotables." He received a favorable performance review in 1992, with a comment that his work was "well above" Monsanto's expectations. In early 1993, Monsanto assigned him a personal computer previously used by Bud Garrison, a high-ranking Human Resources officer. While deleting old files from the computer's hard drive, Kempcke discovered two documents that led to this litigation. One was a June 1991 letter between two Monsanto executives addressing the need to find opportunities for promising young employees. Another was an "Organization Upgrade Plan" for the Global Operations Division, authored by Garrison.

Garrison's Upgrade Plan proposed a reduction in the number of Division managers through reassignment, retirement, and outplacement. It organized the fifty-nine managers into four categories, "must keep," "want to keep," "close calls," and "remove from position." Kempcke was listed in a subpart of the "close calls" category labeled "probably will not make it." All fifteen managers in this subcategory and the "remove from position" category were at least forty years old. The Plan noted that five of the nine employees recommended for outplacement, including Kempcke, would likely "make age an issue" if this action was taken. By the time Kempcke found the document, three of the fifteen had been "downgraded" and six were "on their way out." By August 1996, all fifteen had left the company or been demoted.

Kempcke showed the Upgrade Plan to Garrison and asked, "Does this mean I don't have a job or a future here?" Dissatisfied with Garrison's non-answer, Kempcke then complained to his supervisor, James Schafbuch, that the Upgrade Plan reflected age discrimination. Schafbuch demanded that Kempcke return all documents found in the computer. Kempcke replied that Monsanto should deal with his attorney on that issue. Schafbuch responded with a memorandum stating that Kempcke would be

-2-

terminated for insubordination unless he returned the documents by June 14, 1993. Schafbuch fired Kempcke on June 14 when he failed to meet that deadline.

The district court granted summary judgment dismissing Kempcke's age discrimination and retaliation claims, concluding that Monsanto fired him for a legitimate business reason -- refusing to return company property -- and that Kempcke's refusal was not protected activity that could support a retaliation claim. We review the grant of summary judgment *de novo*. See Rothmeier v. Investment Advisers, Inc., 85 F.3d 1328, 1331 (8th Cir. 1996).

## I. Retaliation

The ADEA provides that it is "unlawful for an employer to discriminate against any of his employees . . . because such individual . . . has opposed any practice made unlawful by this section, or . . . participated in any manner in an investigation, proceeding, or litigation under this chapter." 29 U.S.C. § 623(d). Kempcke's retaliation claim requires proof that he engaged in ADEA-protected activity, Monsanto took adverse employment action against him, and there was a causal connection between the two. See Montandon v. Farmland Ind., Inc., 116 F.3d 355, 359 (8th Cir. 1997). At the summary judgment hearing, supervisor Schafbuch testified that he fired Kempcke "for refusing to return all documents that he may have removed from Monsanto property," including the Upgrade Plan and the 1991 letter that Kempcke had delivered to his attorney. The question, then, is whether Kempcke engaged in ADEA-protected activity when he delivered arguably incriminating company documents to his attorney and then told Monsanto to contact his attorney for return of the documents, instead of complying with Monsanto's demand to return the documents himself.

Protected activity includes "oppos[ing] any practice made unlawful" by the ADEA, § 623(d). Employer conduct that an employee opposes need not in fact be unlawful. Rather, the employee must "demonstrate a good faith, reasonable belief that

the underlying challenged action violated the law." Wentz v. Maryland Cas. Co., 869 F.2d 1153, 1155 (8th Cir. 1989).

Viewing the summary judgment evidence most favorably to Kempcke, a reasonable factfinder could conclude he had a good faith reasonable belief that the documents found in his computer revealed an ongoing Monsanto plan to weed out senior managers, including Kempcke, at least partially because of their ages. Standing alone, the Upgrade Plan is quite innocuous, because an employer's concern with possible age discrimination claims "should not be equated with an admission of age-related animus," Bashara v. Black Hills Corp., 26 F.3d 820, 824 (8th Cir. 1994), and because a document identifying the age of a group of employees is "not significantly probative" of age discrimination. Earley v. Champion Int'l Corp., 907 F.2d 1077, 1082 (11th Cir. 1990). But Kempcke, a twenty-two year employee with an excellent performance record, nonetheless inferred that age was a factor underlying the Plan's proposed outplacements, based upon his interpretation of language in the Plan document, reinforced by Monsanto executives' recurring references to "young promotables" and the 1991 letter declaring a need to find opportunities for younger employees. Kempcke confronted his supervisor with these documents and requested an explanation. That is clearly protected activity. He also gave the documents to his attorney and told his supervisor that Monsanto must deal with his attorney on the question of whether the documents would be returned. This was at least arguably oppositional or litigation activity, because it placed documents that might evidence discrimination in the hands of a legal professional who would litigate the issue on Kempcke's behalf if he could not resolve the matter informally with Monsanto. An employee with a good faith reason to believe his employer is engaged in unlawful age discrimination "has a legitimate interest in preserving evidence of [his employer's] unlawful employment practices." O'Day v. McDonnell Douglas Helicopter Co., 79 F.3d 756, 763 (9th Cir. 1996).

-4-

Even if Kempcke's conduct in delivering arguably incriminating documents to his attorney was generally consistent with opposing unlawful age discrimination, we must also consider whether that conduct was so disruptive, excessive, or "generally inimical to [the] employer's interests . . . as to be beyond the protection" of § 623(d). Hochstadt v. Worcester Foundation for Experimental Biology, 545 F.2d 222, 230 (1st Cir. 1976); see Jackson v. St. Joseph State Hosp., 840 F.2d 1387, 1390-91 (8th Cir. 1988). For example, an employee who steals confidential company documents, even documents that may evidence discrimination, has not engaged in protected activity that will support a retaliation claim if he is discharged for theft. See O'Day, 79 F.3d at 762-64; Hornsby v. Conoco, Inc., 777 F.2d 243, 246 (5th Cir. 1985). Cf. McKennon v. Nashville Banner Publ'g Co., 513 U.S. 352 (1995).

Here, Kempcke innocently acquired the documents, discovering them in a computer assigned to him by Monsanto. This is akin to the employee who is inadvertently copied on an internal memorandum, or who discovers a document mistakenly left in an office copier. Without question, employees in these situations have a duty to safeguard the employer's documents and confidential information. But when documents have been innocently acquired, and not subsequently misused, there has not been the kind of employee misconduct that would justify withdrawing otherwise appropriate § 623(d) protection. Of course, employee insubordination is ordinarily a legitimate non-discriminatory reason for adverse action, see, e.g., Berg v. Bruce, 112 F.3d 322, 327 (8th Cir. 1997), and insubordination can include refusing to return confidential employer documents. But when the insubordination consists of refusing to cease what a jury could find to be reasonable ADEA-protected activity, such as retaining a document that may evidence on-going discrimination, summary judgment dismissing a retaliation claim is not appropriate.

Two recent decisions illustrate the rather subtle distinctions that must be made in these kinds of retaliation cases. In Bullock v. American Tel. & Tel. Co., 50 Fair Empl. Prac. Cas. (BNA) 407, 1989 WL 13242 (N.D. Ill. 1989), an equal employment

compliance officer upset with his salary complained that his analysis of the company's salary programs showed an adverse impact on older employees. The employer asked to see the analysis and underlying data. The employee refused, was fired for insubordination, and sued, claiming unlawful retaliation against his protected activity in investigating age discrimination. The court granted summary judgment for the employer. Because it was plaintiff's job to ensure that the employer's personnel decisions were free of discrimination, his refusal to share his discrimination analysis with the employer was a fundamental breach of a job duty that justified his discharge for insubordination. On the other hand, in Grant v. Hazelett Strip-Casting Corp., 880 F.2d 1564 (2nd Cir. 1989), the company president asked plaintiff to recruit a young man to fill plaintiff's former position. Plaintiff wrote a memorandum setting forth the young man criteria, and the president signed his approval on the memorandum. Plaintiff's supervisor later edited the incriminating criteria out of the document, demanded that plaintiff surrender his copy of the original version, and fired plaintiff for insubordination when he refused. A jury upheld plaintiff's retaliation claim, and the Second Circuit upheld the jury's verdict. The court rejected defendant's contention that this was improper conduct unworthy of ADEA protection because, even if plaintiff had an ulterior motive in asking the president to sign the document, the jury could find this conduct protected because "Grant's memo did not *create* the appearance of discrimination but, as Grant testified, merely documented a discriminatory practice that already existed." 880 F.2d at 1570.

In support of its holding that Kempcke's conduct was not protected activity, the district court cited O'Day and Jefferies v. Harris County Community Action Ass'n, 615 F.2d 1025 (5th Cir. 1980), cases involving improper dissemination of an employer's documents to third parties *other than the plaintiff's attorney.* Here, there is a genuine dispute whether Kempcke disseminated the documents or their contents to persons other than his attorney, conduct that might well be unworthy of protection. For summary judgment purposes, we must accept Schafbuch's testimony that he fired Kempcke simply for refusing to return all copies of the documents, leaving issues such

as wrongful dissemination to others to develop at trial. On this record, a reasonable jury could find that it was protected activity for Kempcke to deliver the documents to his attorney and tell Monsanto to deal with the attorney regarding their return, and that it was unlawful retaliation to fire Kempcke for engaging in this activity. Accordingly, the district court erred in granting summary judgment dismissing the retaliation claim.

## II. Age discrimination

An age discrimination claim requires proof that the employer intentionally discriminated against an employee over the age of forty on account of his age. See 29 U.S.C. §§ 623(a)(1), 631. Age discrimination may be proved indirectly by showing that the employer's proffered explanation is "unworthy of credence" and a pretext for intentional discrimination. Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 256 (1981).

In this case, Kempcke discovered an Upgrade Plan recommending elimination of fifteen division manager positions. The Plan noted that the fifteen were over age forty and predicted that five would complain of age discrimination if outplaced. Kempcke complained that the Plan reflected age discrimination, first to Plan author Garrison and then to supervisor Schafbuch. Rather than provide an explanation, Schafbuch responded with a peremptory demand that Kempcke return the documents or be fired for insubordination, even though Schafbuch knew that Kempcke had given the documents to his attorney.

If there was no more to the incident than that, a reasonable factfinder could conclude that Monsanto's action in firing Kempcke for giving innocently acquired documents to his attorney, rather than returning them himself, was such an extreme overreaction as to be pretextual, that is, "unworthy of credence." And if Monsanto's reason for firing was pretextual, that tends to support the inference that the Upgrade Plan was in fact a plan to terminate Kempcke and others on account of their ages. In

these circumstances, we conclude on the record before us that Kempcke presented sufficient evidence to avoid summary judgment dismissing his age discrimination claim. See generally Ryther v. Kare 11, 108 F.3d 832, 836-38 (8th Cir. 1997), cert. denied, 117 S. Ct. 2510 (1997); Rothmeier, 85 F.3d at 1332.

For the foregoing reasons, the judgment of the district court is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

FAGG, Circuit Judge, dissenting.

Kempcke was fired because he took his employer's documents and refused to give them back. I believe there is a big difference between out-and-out insubordination and protecting one's civil rights when age discrimination is afoot in the workplace. Although unintended, the court's decision not only opens up another avenue of on-the-job mischief but puts employers in a position where they can't do anything about it. I would affirm the district court.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.