# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 97-3066; 97-3122; 97-3832;
97-4221; 97-4369; 97-4370

_____

Ashok K. Gumbhir,                  *
*
    Plaintiff - Appellee/         *
    Cross Appellant,            *
*
    v.                        *
*   Appeals from the United States
Curators of the University of Missouri,  *   District Court for the
*   Western District of Missouri.
    Defendant - Appellant/     *
    Cross - Appellee,        *
*
Robert W. Piepho; R. Lee Evans,    *
*
    Cross - Appellees.       *

_____

Submitted: May 14, 1998
Filed: October 7, 1998

_____

Before BEAM, LOKEN, and MURPHY, Circuit Judges.

_____

LOKEN, Circuit Judge.

After years of bitter feuding within the University of Missouri at Kansas City's School of Pharmacy (UMKC), Professor Ashok Gumbhir commenced this action against UMKC, Pharmacy Dean Robert Piepho, and Professor R. Lee Evans, alleging

employment discrimination, violation of Gumbhir's First Amendment rights in the work place, and defamation. The district court granted summary judgment dismissing Gumbhir's defamation and § 1983 First Amendment claims. After a trial, the jury returned a verdict for UMKC on Gumbhir's claims of race, national origin, and disability discrimination. The jury awarded Gumbhir $4,432.20 in lost wages and benefits on his Title VII retaliation claim, and the court entered judgment on this verdict. Gumbhir then moved for sweeping injunctive relief, prospective equitable monetary relief, and an award of $535,000 in attorneys' fees and costs. The court denied injunctive relief, granted a prospective salary increase of $4,432.20 consistent with the jury's verdict, and awarded $110,000 in attorneys' fees. Both sides appeal. We reduce the award of attorneys' fees and otherwise affirm.

## I. The Jury's Finding of Retaliation Discrimination.

The jury found that Gumbhir was the victim of unlawful retaliation and awarded him $4,423.20 in "lost wages and benefits through the date of this verdict." On appeal, UMKC argues it is entitled to judgment as a matter of law on this claim. We view the evidence in the light most favorable to the jury's verdict, giving Gumbhir as prevailing party the benefit of all inferences that may reasonably be drawn from that evidence. See Kim v. Nash Finch Co., 123 F.3d 1046, 1057-58 (8th Cir. 1997).

The lengthy trial exposed a rather incredible sequence of petty, venomous exchanges between the main protagonists, Professor Gumbhir on the one hand, and Dean Piepho and Professor Evans on the other, an unprofessional spate of communications that would not be tolerated in a well-functioning work place and that should have been beneath the dignity and intelligence of the seemingly well-educated combatants. On appeal, UMKC's opening brief spends twenty pages marshalling this distasteful evidence to show that Gumbhir was the villain, while Gumbhir's opening brief responds with twenty-five pages intended to paint Piepho, Evans, and other UMKC supervisors as the black hats. Most of this is irrelevant to the issues on appeal,

a waste of our time and a strong indication the case has been massively over-lawyered. We will spare the reader a tedious review of these background facts and move directly to the evidence we view as critical to Gumbhir's claim of unlawful retaliation.

A claim of retaliation discrimination requires proof that the employee engaged in protected activity, that the employer took adverse employment action against him, and that there was a causal connection between the two. See Kempcke v. Monsanto Co., 132 F.3d 442, 445 (8th Cir. 1998). Beginning in December 1991, an otherwise disgruntled Gumbhir made a series of complaints to Piepho and the Vice Provost of Affirmative Action about ethnic slurs by Evans, about an Associate Dean's unfavorable comment concerning immigrants working in the United States, and about what Gumbhir perceived as a racially biased environment in the School of Pharmacy. Gumbhir received substantially below average salary increases the next three times the School of Pharmacy gave such increases. UMKC argues Gumbhir's complaints about ethnic discrimination were not protected activity, and denying him salary increases was not adverse employment action. These contentions are frivolous. See Davis v. City of Sioux City, 115 F.3d 1365, 1369 (8th Cir. 1997); Smith v. St. Louis University, 109 F.3d 1261, 1266 (8th Cir. 1997).

The critical issue is whether there was sufficient evidence of a causal connection between Gumbhir's protected activity of complaining about racial and ethnic discrimination, and UMKC's adverse salary actions. The district court properly instructed the jury that to prove his claim of unlawful retaliation, Gumbhir "must prove by the greater weight of the evidence that [UMKC] took action against plaintiff for exercising his rights to object to race or national origin or disability discrimination." The sufficiency issue is close because UMKC presented strong evidence of legitimate non-discriminatory reasons for its salary actions. But giving the verdict the deference to which it is entitled, we conclude the evidence was sufficient to permit the jury reasonably to infer that UMKC's adverse salary actions were motivated at least in part

by an intent to retaliate for Gumbhir's protected activity. Accordingly, the district court's judgment on the jury verdict dated May 15, 1997, must be affirmed.

## II. The Grant of a Prospective Salary Increase.

The district court granted Gumbhir equitable relief in the form of a prospective pay increase of $4,423.20, an amount equal to the back pay the jury awarded to the date of its verdict. It is often appropriate to grant a prospective salary adjustment, or some other form of "front pay," in an employment discrimination case. We review the grant or denial of such equitable relief under the abuse of discretion standard. See Newhouse v. McCormick & Co., 110 F.3d 635, 643 (8th Cir. 1997).

At trial, UMKC sought to introduce evidence that Gumbhir double-billed the University for certain consulting trips, behaved inappropriately to female students, and secretly managed an HMO in Texas. The district court excluded this evidence. On appeal, UMKC does not challenge these evidentiary rulings. Instead, it argues the court abused its discretion by awarding Gumbhir equitable relief without considering this evidence of employee wrongdoing and unclean hands, citing McKennon v. Nashville Banner Publishing Company, 513 U.S. 352, 361 (1995), and Gibson v. Mohawk Rubber Company, 695 F.2d 1093 (8th Cir. 1982). We disagree. While those opinions stress the importance of considering all relevant circumstances in awarding equitable relief, including employee wrongdoing, neither case involved evidence that had been excluded at trial. Indeed, our decision in Gibson emphasized that a post-trial decision regarding equitable relief may not be based upon findings that conflict with those made by the jury. 695 F.2d at 1101. Thus, the district court did not abuse its discretion in declining to consider in fashioning equitable relief evidence it had excluded from the jury's consideration at trial. The award of a prospective salary increase is consistent with the jury's back pay verdict and must be affirmed.

### III. The Dismissal of Gumbhir's § 1983 Claims.

Count III of the fifty-one-page Third Amended Complaint asserted claims under 42 U.S.C. § 1983 against UMKC and the individual defendants. One claim is that defendants violated Gumbhir's First Amendment rights by punishing him for opposing unlawful discrimination and speaking out on matters of general academic concern. The district court granted summary judgment dismissing Count III. On appeal, Gumbhir argues that genuine issues of material fact preclude summary judgment on his First Amendment § 1983 claim. We review the grant of summary judgment de novo.

It is well settled that UMKC "cannot condition public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression." Connick v. Myers, 461 U.S. 138, 142 (1983). The district court concluded Gumbhir had not spoken out on matters of public concern; that if he did it was to denigrate his academic colleagues, not to benefit the public; and that he presented no evidence his criticism of Piepho and Evans was a substantial factor in any adverse employment actions. This was the proper legal standard. See Pickering v. Board of Educ., 391 U.S. 563, 568-73 (1968); Bausworth v. Hazelwood Sch. Dist., 986 F.2d 1197, 1198 (8th Cir. 1993). After careful review of the summary judgment record, we agree with the district court's conclusions and affirm the dismissal of Gumbhir's § 1983 claims.

### IV. The Defamation Claim.

In 1992, Gumbhir refused to teach some of his assigned courses. The School of Pharmacy issued him a letter of censure in December 1993, which became a basis for his state law claim of defamation. The district court dismissed this claim on the ground that dissemination of the letter within the UMKC community was not the requisite publication as that element of the tort was construed in Rice v. Hodapp, 919 S.W.2d 240, 243 (Mo. banc 1996) ("communications between officers of the same corporation

in the due and regular course of the corporate business, or between different offices of the same corporation, are not publications to third persons").

Gumbhir argues the district court misapplied <u>Rice</u> because there is evidence the letter was distributed to the entire School of Pharmacy faculty, and "[d]efamatory statements made by company officers or supervisors to non-supervisory employees constitute a publication for purposes of a defamation action." <u>Rice</u>, 919 S.W.2d at 243. However, even assuming other faculty members were non-supervisory employees for purposes of this rule, Missouri courts recognize a qualified privilege, to be determined by the court as a matter of law, for a good faith communication "in which the person making the communication has an interest or in reference to which he has a duty, and to a person having a corresponding interest or duty." <u>Id.</u> at 244. Internal communications related to the solving of personnel problems are entitled to this privilege. <u>See</u> <u>Blake v. May Dept. Stores Co.</u>, 882 S.W.2d 688, 690 (Mo. App. 1994); <u>Lovelace v. Long John Silver's, Inc.</u>, 841 S.W.2d 682, 685 (Mo. App. 1992). Having reviewed the summary judgment record de novo, we conclude the district court correctly applied <u>Rice</u>. The dismissal of Gumbhir's defamation claim is affirmed.

## V. The Award of Attorneys' Fees.

Gumbhir initially requested an award of $488,960.25 in attorneys' fees and $45,909.55 in costs. The district court advised that it would reduce this request because of limited success and invited Gumbhir to brief the issue further. Gumbhir then urged the court to award $458,263.57 in attorney's fees and $46,576.98 in costs. The court reduced the award to $110,000 in attorneys' fees and $15,000 in costs. The court cited four categories of unreasonable billing claims and also concluded that Gumbhir had achieved very limited success in the litigation because only three of nine claims survived summary judgment, retaliation was not his major claim, he received only a fraction of the compensatory damages sought and no punitive damages, and he was denied the wide-ranging equitable relief requested. Both sides appeal this ruling.

-6-

UMKC argues Gumbhir is entitled to no fee because of his "inexcusable behavior." We reject this attempt to reargue the adverse jury verdict on retaliation. Gumbhir was a "prevailing party" entitled to some fee. The question is how much. See Warner v. Independent Sch. Dist. No. 625, 134 F.3d 1333, 1336 (8th Cir.), petition for cert. filed, 66 U.S.L.W. 3800 (U.S. Jun. 4, 1998).

Gumbhir urges us to grant the fees and costs he requested. His amended fee petition was based upon attorney hours allegedly spent on the litigation and what he claimed were reasonable hourly rates, reduced by ten percent because of the district court's finding of limited success. "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983); see City of Riverside v. Rivera, 477 U.S. 561, 569 n.4 (1986). In determining what hours were reasonably expended in this case, the district court properly examined whether particular claimed hours were unreasonable and the question of limited success. But it overlooked another aspect of reasonableness -- the question whether the requested fee award when based upon hours allegedly expended exceeds the amount that could ever be reasonable for a case of this nature. This question is relevant because attorneys "should not be permitted to run up bills that are greatly disproportionate to the ultimate benefits that may be reasonably attainable." Copeland v. Marshall, 641 F.2d 880, 908 (D.C. Cir. 1980) (en banc) (MacKinnon, J., concurring).

In his closing argument to the jury, counsel for Gumbhir requested lost salary damages of $20,832 plus an unspecified amount for emotional distress. A lawyer who does not urge the jury to award a specific amount for emotional distress damages, and whose remaining claim for compensatory damages is $20,832, cannot expect that the jury will award substantial emotional distress damages. In other words, counsel knew from the outset that this case involved only a relatively modest claim for compensatory damages, perhaps $50,000 to $75,000 at most. It was not reasonable for an attorney

to run up a bill of $450,000 to $500,000 to litigate this type of damage claim. We conclude that if the jury in this case had awarded Gumbhir *the full amount* he requested in closing argument, a reasonable fee could not have exceeded $110,000, the amount awarded by the district court for Gumbhir's far more limited success.[1] This was not a case with broad civil rights implications. It was a damage action for injury suffered from a rancorous employment dispute that degenerated into unlawful racial or ethnic retaliation.

If an award of $110,000 would have been appropriate had Gumbhir been fully successful, the actual award must be substantially reduced because of his very limited success. "[T]he most critical factor in determining the reasonableness of a fee award is the degree of success obtained." Farrar v. Hobby, 506 U.S. 103, 114 (1992). Gumbhir did not succeed on his claims for institutional equitable relief. He prevailed on only one of his personal damage claims. The jury awarded him $4,423.20 of the $20,832 in quantifiable damages he requested, and the court awarded an additional $4,423.20 in the form of a prospective pay increase. Although pro rata fee reductions based upon the relationship between damages requested and damages awarded are often inappropriate, we conclude that this approach is if anything a generous method

---

[1]It might be argued that the case as framed by Gumbhir could not have been effectively litigated to a fully tried conclusion for this amount of attorney time. One response to that contention is that competent attorneys are adept at finding ways of litigating cases so that the time expended is reasonably related to the amount at issue. Another response is that of the court in Scheriff v. Beck, 452 F. Supp. 1254, 1261 (D. Colo. 1978):

> The dispute here is personal. The relatively small sums awarded by the jury indicate that in the general scheme of things, the affair was minor and should never have happened. Good sense among intelligent, if unfriendly, people should have prevailed. The argument should have been resolved within the community or in some forum other than the courts [and] that it did not is unfortunate.

of determining the appropriate reduction for limited success in this case. The total damages awarded Gumbhir were $8,846.40 or 42.5% of the lost salary damages he requested. Therefore, a reasonable attorneys' fee award cannot exceed 42.5% of $110,000, or $46,750.

The district court's attorneys' fee award is reduced to $46,750. As so modified, the judgment of the district court is affirmed, including its award of $15,000 in costs.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.