976 A.2d 429 (2009)
409 N.J. Super. 193
Joyce QUINLAN, Plaintiff-Respondent,
v.
CURTISS-WRIGHT CORPORATION, Defendant-Appellant.
No. A-5728-06T1
Superior Court of New Jersey, Appellate Division.
Argued March 10, 2009.
Decided August 11, 2009.
*433 Rosemary Alito, Newark, argued the cause for appellant (K & L Gates, attorneys; Ms. Alito, of counsel and on the briefs; George Barbatsuly, on the briefs).
Neil Mullin, Montclair, argued the cause for respondent (Smith Mullin, attorneys; Mr. Mullin and Nancy Erika Smith, of counsel and on the brief).
Before Judges WEFING, PARKER and LeWINN.
The opinion of the court was delivered by
WEFING, P.J.A.D.
Following the return of a jury's verdict, the trial court entered a judgment in plaintiff's favor for $4,565,479 in compensatory damages, $4,565,479 in punitive damages, $44,363.49 in prejudgment interest, $1,398,796 for counsel fees and costs, and $75,000 to compensate the plaintiff for negative tax consequences she would experience as a result of this award. Defendant has appealed from this judgment, the total amount of which was $10,649,117.49. After reviewing the record in light of the contentions advanced on appeal, we affirm in part and reverse in part and remand for further proceedings.
Plaintiff was employed in the human resources department of Curtiss-Wright ("Curtiss"), an aerospace and defense contractor, starting in 1980 as a benefits analyst. By the time she started working for defendant, she had had experience at several other companies. She had both an undergraduate degree and a masters degree in business administration. When she began her employment at Curtiss, she signed a statement acknowledging that she could not disclose to others confidential information she obtained during the course of her employment. In addition, several years before the incidents which gave rise to this litigation, she acknowledged receiving a copy of the code of conduct that Curtiss had adopted for its employees. The code precluded an employee from using his or her position with the company for private advantage.
By 1999, plaintiff had worked her way up to become the Executive Director of Human Resources. Plaintiff contended this was a promotion for her, defendant that it simply represented a change in title. A large part of plaintiff's work in the human resources department involved the area of employee benefit plans. Plaintiff maintained that as her career progressed, her areas of responsibility did as well, but defendant maintained that her essential focus remained that of benefit plans.
In July 2000, Curtiss hired Kenneth Lewis to work in human resources, with the title of director of succession planning and management development. In January 2003, Curtiss reorganized its human resources department, and Lewis was promoted to the position of vice-president of human resources and management development. One of the results of this reorganization was that Lewis became plaintiff's superior.
Plaintiff, who had significantly more years of experience than did Lewis, was of the opinion that she had been passed over for reasons of gender. The initial reaction she expressed to Curtiss's chief executive officer, Martin Benante, however, was not *434 that of discrimination, but that he had made a mistake in selecting Lewis for the position, and she expressed her dissatisfaction. She was told that Lewis received the position because of several initiatives he had conceived and implemented in the human resources department. At trial, defendant also presented evidence of a concern with plaintiff's budget skills in that it contended plaintiff had not scrutinized carefully enough certain bills submitted by an outside actuarial firm, with the result that a certain project ran significantly over budget. She contended she was not responsible for passing on the substantive accuracy of these bills.
Dissatisfied with the explanations she received, plaintiff consulted with counsel. In addition, she began to review files in the human resources department looking for and copying material that she felt bolstered her case of gender discrimination. These documents contained confidential personal information such as home addresses, telephone numbers and social security numbers, as well as salary information. She delivered this material, more than 1800 pages in all, to her attorneys.
In November 2003, counsel filed a four-count complaint on plaintiff's behalf, alleging gender discrimination, pattern and practice, wage disparity, and wage discrimination.[1] Discovery commenced, in the normal course of which Curtiss served a demand for the production of documents. R. 4:18. Plaintiff's attorneys delivered to Curtiss's trial counsel the records that she had copied from Curtiss's files and given to them. Curtiss's trial counsel, in turn, gave copies of the documents to Curtiss's in-house counsel, Paul Ferdenzi, who was monitoring the litigation.
This document production by plaintiff was the first notice to Curtiss that plaintiff had copied confidential personnel files, although the record is not entirely clear as to when Ferdenzi, in fact, became aware of the nature of the documents that had been produced. When he did realize what had occurred, Ferdenzi discussed the issue in general terms with his superior, Curtiss's general counsel, Michael Denton. Denton advised Ferdenzi to take the matter up with trial counsel. Neither, however, approached Curtiss's chief executive officer, Benante, on the question.
In May 2004, several weeks after turning over these documents, plaintiff's attorneys took the deposition of Kenneth Lewis. During the course of that deposition, plaintiff's counsel asked him about his most recent performance appraisal, for the period ending in April 2004. Plaintiff had received that document in connection with her position in Curtiss's human resources department, and she made a copy of it for her attorneys because she felt it vindicated her position. When Lewis was confronted with the appraisal at his deposition, he maintained he had never seen it before and was not familiar with its contents. Curtiss's trial counsel objected to the use of this document at the deposition.[2]
Ferdenzi was present at this deposition. After it was completed, he informed Denton and Benante of what had occurred and his view that it demonstrated that plaintiff was continuing to copy confidential material. Shortly thereafter, plaintiff was fired. Her termination letter included the following language.
Without authorization, you have removed confidential, and in some instances *435 privileged, information.... This unauthorized taking of confidential or privileged information from the Corporation constitutes a theft of Company property....
Plaintiff then amended her complaint to add a count for retaliation.
This matter was tried twice. The first trial commenced in February 2006 and took almost three weeks. The jury was unable to reach a verdict after deliberating for several days and a mistrial was declared. Testimony in the second trial started on January 22, 2007; the jury returned its verdict in plaintiff's favor on February 13, 2007.

I
Curtiss raises a number of arguments on appeal, the first of which revolves around the trial court's rulings with respect to the manner in which evidence dealing with plaintiff's copying and use of Lewis's performance appraisal at his deposition could be used at trial. Prior to the first trial getting underway, Curtiss moved to dismiss plaintiff's claim of retaliation. The trial court denied this motion, concluding that plaintiff's use of Lewis's performance appraisal at his deposition was protected activity. The trial court adhered to this ruling for the second trial and instructed the jury in the following manner:
[W]hile Joyce Quinlan's conduct in copying and removing copies of documents is not protected and is conduct for which she could have been justifiably terminated, the conduct of her attorneys in using those documents in the process of prosecuting this lawsuit is protected activity and could not properly have been a determinative factor in terminating her.
There are two aspects to defendant's argument with respect to plaintiff's retaliation claim. Curtiss argues that the trial court's legal analysis of plaintiff's claim of retaliation, summarized in the portion of the charge set forth above, was incorrect. Curtiss also argues that plaintiff failed to establish a prima facie claim of retaliation. We agree with the first contention but not the second.

A
N.J.S.A. 10:5-12(d) prohibits retaliation against any person
because that person has opposed any practices or acts forbidden under this act or because that person has filed a complaint, testified or assisted in any proceeding under this act or to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of that person having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by this act.
We first note the basic principles underlying a claim of retaliation in violation of our statute. A prima facie case of retaliation requires proof that a plaintiff engaged in a protected activity, that the employer knew that the plaintiff had engaged in such protected activity, that the employer unlawfully retaliated against the employee and that the retaliation was caused by the employee's participation in that protected activity. Tartaglia v. UBS PaineWebber, Inc., 197 N.J. 81, 125, 961 A.2d 1167 (2008); Craig v. Suburban Cablevision, Inc., 140 N.J. 623, 629-30, 660 A.2d 505 (1995). If a plaintiff presents a prima facie case of retaliation, the burden shifts to the defendant to "articulate a legitimate, non-retaliatory reason for the decision." Young v. Hobart West Group, 385 N.J.Super. 448, 465, 897 A.2d 1063 (App.Div.2005) (quoting Romano v. Brown & Williamson Tobacco Corp., 284 N.J.Super. 543, 549, 665 A.2d 1139 (App.Div.1995)). Upon presentation of that legitimate, non-retaliatory reason, *436 the plaintiff must demonstrate that the employer had a discriminatory motive and that its proffered reason was simply pretextual. Romano, supra, 284 N.J.Super. at 549, 665 A.2d 1139.
Proof that the complaining employee had engaged in a protected activity is an essential element to a claim of retaliation. Erickson v. Marsh & McLennan Co., 117 N.J. 539, 560, 569 A.2d 793 (1990). While an activity taken in furtherance of the employee's claim of discrimination is protected activity, N.J.S.A. 10:5-12(d), not all such activity is protected. Carmona v. Resorts Int'l Hotel, Inc., 189 N.J. 354, 373, 915 A.2d 518 (2007) (noting that the New Jersey Law Against Discrimination ("LAD") is not "a sword to be wielded by a savvy employee against his employer"). We agree with Curtiss that taking confidential documents from an employer and using them to advance a discrimination claim is not necessarily a protected activity.

i
Our research has not revealed a reported New Jersey case which has considered whether taking confidential documents from an employer can be considered a protected activity.[3] Several federal courts have addressed the question, however. It is appropriate to note the varying approaches taken in these matters.
In O'Day v. McDonnell Douglas Helicopter Co., 79 F.3d 756, 763 (9th Cir.1996), certified question answered, 191 Ariz. 535, 959 P.2d 792 (1998), the plaintiff rummaged through a supervisor's desk in search of documents that might assist him in his discrimination claim. In determining whether the acquisition of these materials was protected activity, the Ninth Circuit introduced a balancing test, which balanced the purpose of the Act (in that case, Title VII), which was to protect people reasonably engaged in activities opposing discrimination, against Congress's desire not to tie the hands of employers. Ibid. The court found in favor of the employer because the plaintiff committed a serious breach of trust by not only rummaging though his supervisor's desk, but showing the documents to a co-worker. Ibid.
In Kempcke v. Monsanto Co., 132 F.3d 442, 445-47 (8th Cir.1998), the plaintiff was provided with a computer that had previously been used by another employee. He discovered on that computer's hard drive documents that were inadvertently left on the computer by its prior user and that the plaintiff believed were evidence of discrimination at the company. Ibid. He approached his supervisor for an explanation, and was ordered to return the documents. Ibid. Instead, the plaintiff handed them to his attorney, and he was terminated for insubordination. Ibid. The Eighth Circuit held that because the documents were "innocently acquired" and there was no evidence of improper dissemination of the material to anyone other than the plaintiff's attorney, summary judgment was improper. Id. at 446-47. The Kempcke court analogized this to a person finding documents left on a copying machine or inadvertently being copied on a memo, and stated that when a document has been innocently acquired, and not subsequently misused, there has not been sufficient employee misconduct that would justify withdrawing *437 the normal protections afforded to employees who protest discrimination. Id. at 446.
Watkins v. Ford Motor Co., No. C-1-03-033, 2005 WL 3448036, at 6, 2005 U.S. Dist. LEXIS 33140, at *18 (S.D.Ohio Dec. 15, 2005),[4] involved an employee who copied confidential documents that were contained in a binder in the personnel office, and provided them to his attorney in furtherance of a discrimination claim. The Ohio Southern District Court found that this was not protected activity under Ohio's retaliation law, which closely tracked Title VII. Id. 2005 WL at *7, 2005 U.S. Dist. LEXIS at *19-*20. The court stated that to hold otherwise would be to open the door to plaintiffs everywhere who want to steal company information and be protected from adverse action by the employer. Ibid. The Watkins court expressed that the facts before it were analogous to O'Day, and that it was "loathe to provide employees an incentive to rifle through confidential files looking for evidence" that might be helpful later in litigation. Id. 2005 WL 3448036, at *7-8, 2005 U.S. Dist. LEXIS at *21-*23 (quoting O'Day, supra, 79 F.3d at 763). The statute "is not an insurance policy, a license to flaunt [sic] company rules or an invitation to dishonest behavior." Id. 2005 WL 3448036 at *7, 2005 U.S. Dist. LEXIS at *23 (quoting O'Day, supra, 79 F.3d at 764). The court determined that, instead, the plaintiff should have gone through the proper legal channels to obtain the necessary information. Ibid. Watkins also stated that copying files from the human resources department could not be considered innocent acquisition. Id. 2005 WL 3448036 at *7, 2005 U.S. Dist. LEXIS at *19.
In Niswander v. Cincinnati Ins. Co., 529 F.3d 714, 717 (6th Cir.2008), the employee worked at home on her home computer and had access to confidential files which she copied and gave to her attorney in furtherance of a pending class action lawsuit to which she had opted in. The Sixth Circuit affirmed the decision of the district court that plaintiff had not engaged in protected activity. Ibid. It reviewed federal cases that had dealt with the issue of confidential documents produced in discovery in the context of a retaliation claim, and, citing O'Day, supra, stated that courts must use a balancing test to determine whether the unauthorized disclosure of documents should be protected. Id. at 722-23. The Niswander court noted that the other circuits emphasized how the documents were obtained, and to whom they were distributed. Id. at 725. The question was whether the employee's dissemination of confidential documents was reasonable under the circumstances. Ibid. The court stated that participation in a lawsuit might afford greater protection than merely opposing discrimination. Id. at 726.
The Sixth Circuit developed a six-prong test to determine whether the dissemination of documents should be protected. Niswander, supra, 529 F.3d at 726. The factors to be considered were: how the documents were obtained; to whom the documents were produced; the content of the documents, both in terms of the need to keep the information confidential and its relevance to the employee's claim of unlawful conduct; why the documents were produced, including whether the production was in direct response to a discovery request; the scope of the employer's privacy policy; and the ability of *438 the employee to preserve the evidence in a manner that did not violate the employer's privacy policy. Ibid.
The court stated that even though the plaintiff's documents were contained on her computer, factor onehow the documents were obtaineddid not weigh heavily in her favor. Id. at 727. Rather than innocently "stumbling" upon evidence of illegal employment practices as the employee in Kempcke had done, the plaintiff searched through the files on her computer system looking for evidence of discrimination. Ibid.

ii
In this matter, Curtiss contended that plaintiff's taking confidential documents from her employer was not a protected activity. The trial court agreed, as do we. When the trial court in this matter was presented with Curtiss's motion to dismiss plaintiff's claim of retaliation, however, it distinguished between those documents which she obtained and copied by going through files and her attorney's use of Lewis's performance appraisal while deposing him, finding that Curtiss could properly terminate her for the former but not the latter.
We find no support for this distinction in the case law or in policy. In our view, the result of such an analysis is to transform an unprotected action, copying confidential items, into a protected action on the basis of subsequent use of the confidential material. Such an approach, in our view, could have the undesirable result of encouraging employees to go through their employers' files and copy confidential material, secure in the knowledge that employers could do nothing so long as that material was later used in litigation.
Such a distinction could be appropriate if this matter involved an issue of the litigation privilege. Rabinowitz v. Wahrenberger, 406 N.J.Super. 126, 966 A.2d 1091 (App.Div.2009) (holding that an attorney is not subject to suit based upon questions posed at a deposition). The distinction, however, in a suit such as this approaches the metaphysical. Indeed, the trial court itself described it as asking jurors to count the number of angels on the head of a pin.
The trial court also distinguished between the vast majority of documents that plaintiff gave to her attorneys and Lewis's performance appraisal, which came to her in the regular course of her duties. The trial court made the following comments.
How Curtiss-Wright could expect that this would not be noticed by Quinlan is beyond imagination, given that it appears to vindicate Quinlan's position that she was more qualified than Lewis for the job, making it a potential "smoking gun" in the lost promotion lawsuit. It is obvious that Quinlan would she would [sic] disclose it to her lawyer in the midst of a lawsuit about the very promotion which is the subject of the appraisal. An employer cannot lay traps for its employees by tantalizing them with such documents, enticing them to send a copy to their lawyer, and then claim that their lawyer's use of the document is wrongful.
We agree with Curtiss that plaintiff was not entitled to protection on such a basis. There is nothing in the record which would support an inference that Curtiss attempted to "lay a trap" for plaintiff. Such a document would have been delivered to plaintiff in the regular course of her duties prior to her filing suit; if Curtiss had altered that routine after she filed suit, it could have opened itself to the possibility of another claim of retaliation.
*439 In support of this aspect of its ruling the trial court relied upon the decision of the Eighth Circuit in Kempcke, supra. Kempcke, however, is distinguishable. The employee in that case, while using a computer provided to him by his employer, came upon documents which had been inadvertently left on the computer's hard drive by an employee who had previously used that machine. 132 F.3d at 444. The employee refused to comply with an order to return the documents and instead gave them to his attorney, who used them in his suit alleging age discrimination and retaliation. Id. at 445.
Plaintiff here did not inadvertently stumble upon the performance appraisal that had been completed for Lewis. It was not, for instance, inadvertently left in the copy machine to be discovered by the next individual using the machine. Rather, she was entrusted with it as part of her regular duties in the human resources department.
Even if we did not consider Kempcke to be distinguishable, we would decline to follow it. We subscribe to the views expressed in the dissenting opinion, that the decision "not only opens up another avenue of on-the-job mischief but puts employers in a position where they can't do anything about it." Id. at 447 (Fagg, J., dissenting).
A correct jury charge is fundamental to a fair trial. Reynolds v. Gonzalez, 172 N.J. 266, 288, 798 A.2d 67 (2002). "Jury instructions should correctly state the applicable law in clear and understandable language." Boryszewski v. Burke, 380 N.J.Super. 361, 374, 882 A.2d 410 (App.Div.2005), certif. denied, 186 N.J. 242, 892 A.2d 1288 (2006). "[T]he ultimate responsibility rests with the court to instruct the jury regarding the appropriate law that is applicable to the evidence." Das v. Thani, 171 N.J. 518, 530, 795 A.2d 876 (2002).
When reviewing a trial court's instruction to the jury, an appellate court must read the charge as a whole. Sons of Thunder, Inc. v. Borden, Inc., 148 N.J. 396, 418, 690 A.2d 575 (1997). Erroneous instructions on a material issue are presumed to constitute reversible error. State v. Collier, 90 N.J. 117, 122-23, 447 A.2d 168 (1982).
We have earlier set forth a portion of the court's charge on plaintiff's claim of retaliation, in particular, its instruction that the use of Lewis's performance appraisal at his deposition did not provide a basis for plaintiff's termination. We consider this charge to be erroneous for the reasons we have set forth. Defendant is entitled to a new trial on this issue.

B
Defendant also contends that plaintiff failed to establish a prima facie case with respect to the other aspect of her claim of retaliation, that she was terminated for filing her suit claiming gender discrimination. Curtiss maintains that this claim should have been dismissed because plaintiff did not present sufficient evidence that there was a causal connection between the filing of her lawsuit and her termination. We disagree.
Curtiss stresses that plaintiff was not terminated until seven months after she filed her suit. It notes that in the interim she received her regular raise and bonus. There was also testimony, however, that Benante, defendant's chief executive officer, had gone "ballistic" when he heard that plaintiff had filed suit alleging discrimination. In addition, Curtiss points to Ferdenzi's testimony that plaintiff was terminated when Curtiss realized as a result of Lewis's deposition that she was continuing *440 to copy confidential documents. The jury may or may not have accepted Ferdenzi's explanation of the timing of the decision to fire plaintiff. In light of the standard to be employed in analyzing motions presented both under Rule 4:37-2(b) and Rule 4:40-1, we consider plaintiff's evidence of a causal link, while hardly overwhelming, to be sufficient to have required jury resolution.

C
Defendant raises several other arguments with respect to the use of Lewis's performance appraisal at trial. Although our determination that the trial court's charge was erroneous would make it unnecessary to consider these contentions, we do so for the guidance of the trial court and the litigants in any subsequent proceedings.
Curtiss contends, by way of example, that the trial court erred when it determined to admit Lewis's performance appraisal into evidence. It argues that the performance appraisal, which was completed months after Lewis was promoted, was irrelevant to plaintiff's claim that Lewis's promotion was the result of gender discrimination.
We disagree. Baker v. Nat'l State Bank, 312 N.J.Super. 268, 295-96, 711 A.2d 917 (App.Div.1998) ("Baker I"), aff'd in part and remanded in part, 161 N.J. 220, 736 A.2d 462 (1999) ("Baker II"), held that a later performance review was admissible on the question of state of mind and credibility. While Baker is admittedly distinguishable on a factual basis, we consider that principle equally applicable here. There was no error in admitting Lewis's subsequent performance appraisal into evidence.
We also reject defendant's contention that the appraisal should have been rejected because its use was unduly disruptive. We cannot help but note that at the time of Lewis's deposition, he was not actively working for Curtiss, but was awaiting deployment for military service in Afghanistan. The use of the appraisal at his deposition could thus hardly have disrupted the performance of his duties for Curtiss.

II
Curtiss argues that plaintiff failed to present a prima facie case of discrimination with respect to defendant's failure to promote her and that the trial court should not have submitted that issue to the jury. After reviewing this record, we are unable to agree.
To establish a prima facie case of discrimination, plaintiff was required to establish that she was a member of a protected class, that she applied for a position for which she was qualified and was not selected, and that the employer filled that position with a person from outside the protected class who had similar or lesser qualifications. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668, 677 (1973).
Curtiss argues that plaintiff failed to present a prima facie case of discrimination because she failed to establish that she was objectively qualified for the position given to Lewis. Curtiss points out that plaintiff conceded that she did not have any experience in succession management, a qualification that was important to Curtiss in filling this new position. Curtiss also stresses that Lewis had more experience in other areas that were important to Curtiss in terms of the responsibilities of the new position.
In our judgment, these are arguments properly addressed to the jury. Plaintiff had more than twenty years of experience *441 in human resources, working at ever higher levels. She was considered highly qualified by her previous boss, and there is no evidence in this record that Curtiss was dissatisfied with her work (other than the issue of certain actuaries' bills, to which we alluded earlier). In our judgment, a reasonable jury could view the evidence presented and conclude either way on the question of gender discrimination. In such a posture, plaintiff presented a prima facie case of discrimination which it was up to the jury to resolve.
Defendant also asserts that plaintiff did not prove that its reasons for not promoting her were merely pretextual. The jury's rejection of defendant's argument on this issue finds support in the record, however. During the course of the trial there was evidence presented that could support plaintiff's claims of discrimination, and the existence of a glass ceiling. Examples are Benante's remark that women are not drawn to manufacturing jobs to explain the few women in leadership positions at Curtiss. There was also evidence that he engaged in social activities such as golf with male employees but not with women employees. Curtiss presented explanations and evidence which, if accepted, would support a finding that it did not discriminate against plaintiff because of her gender. It was up to the jury to scrutinize the evidence presented by both parties and decide which to accept and which to reject.

III
Defendant complains that various aspects of the jury's award of compensatory damages cannot withstand analysis. It asserts that the jury's award of future economic loss in excess of three million dollars must be set aside on a number of grounds. We decline to address defendant's contentions in this regard in detail in light of the fact that we have determined that there must be a new trial on plaintiff's claim of retaliation.
The trial court stressed in deciding post-trial motions that the jury had been asked if defendant had proven that plaintiff's "copying and removing copies of [defendant's] confidential documents would have resulted in [her] being fired in any event." The jury responded that defendant had not. We do not view this jury response as conclusive that plaintiff would have recovered damages for future economic loss in light of the incorrect jury instructions on the use of Lewis's performance appraisal.
Because we are remanding the matter for a new trial on plaintiff's claim of retaliation, we also do not address defendant's contention that plaintiff's claim to economic damages is barred by the after-acquired doctrine, that is, that plaintiff would have been terminated in any event once defendant learned of plaintiff's copying and removal of confidential documents. McKennon v. Nashville Banner Publ'g Co., 513 U.S. 352, 361-62, 115 S.Ct. 879, 886, 130 L.Ed.2d 852, 863 (1995); Cicchetti v. Morris County Sheriff's Office, 194 N.J. 563, 947 A.2d 626 (2008). Plaintiff, of course, points to the jury interrogatory that we have just noted to assert that this principle is inapplicable to this matter. That, however, must await correct jury instructions.

IV
Defendant also complains of various rulings by the trial court during the course of the proceedings, starting with a statement in plaintiff's opening. Setting forth the entire factual background on this one issue would, in our judgment, unnecessarily lengthen an already extensive opinion. We note merely that we concur with defendant's attorney that the remark by plaintiff's counsel that the billing records *442 of defense counsel's firm did not support certain testimony by Ferdenzi was improper. Plaintiff's counsel knew that the material within the billing records was subject to the attorney-client privilege and would not be produced. We cannot, however, deem the trial court's refusal to grant defendant's motion for a mistrial an abuse of the court's discretion. We expect, however, that such a remark will not be repeated.
During the deposition of Lewis, when plaintiff's counsel sought to question him about the recent performance appraisal, defendant's attorney interposed an objection to its use, noting plaintiff's improper copying of the document. We agree with defendant that plaintiff's counsel should not have been permitted to read the text of that objection as evidence to the jury. Defense counsel was asserting a legal position on behalf of her client, as she was obligated to do in representing defendant. Further, it was improper for plaintiff's counsel to later use that objection in summation as proof of Benante's state of mind. We would also expect those remarks not to be repeated.
Defendant's remaining arguments under this point heading do not warrant further discussion in a written opinion. R. 2:11-3(e)(1)(E).

V
Defendant also argues that the record developed at trial did not warrant submitting the question of punitive damages to the jury. Having reviewed this record, we agree.
New Jersey has a strong public policy against discrimination in the workplace. Punitive damages may only be awarded in a case brought under the LAD, however, when there is both actual participation in the wrongful behavior on the part of upper management, and when the wrong-doer's behavior is especially egregious. Rendine v. Pantzer, 141 N.J. 292, 313-14, 661 A.2d 1202 (1995). Here, the relevant decision maker was Benante, defendant's chief executive officer, thus satisfying the first prong.
Our Supreme Court has defined egregious behavior for purposes of an award of punitive damages under the LAD.
To warrant a punitive award, the defendant's conduct must have been want only reckless or malicious. There must be an intentional wrongdoing in the sense of an "evil-minded act" or an act accompanied by a wanton and wilful disregard of the rights of another.... The key to the right to punitive damages is the wrongfulness of the intentional act.
[Id. at 314, 661 A.2d 1202 (citations omitted).]
Proof of malice is a condition precedent to an award of punitive damages. Ibid. In Rendine, the employees were discharged while they were out on maternity leave. Id. at 315, 661 A.2d 1202. The Court stated that the record was filled with indications of malice on the part of the defendant. Id. at 315-16, 661 A.2d 1202. Here, the record does not support a finding of actual malice on defendant's part; plaintiff remained in her same position and received a bonus and a raise even after she filed suit alleging discrimination.
In BMW of N. Am. v. Gore, 517 U.S. 559, 575, 116 S.Ct. 1589, 1598-99, 134 L.Ed.2d 809, 826 (1996), the Supreme Court held that the reasonableness of a punitive damages award must take into consideration the degree of reprehensibility of the defendant's behavior, the relationship between the harm suffered and the punitive damages award, and the difference between the punitive damages award and the civil penalties authorized in *443 similar cases. The New Jersey Supreme Court adopted this standard in Baker II, supra, 161 N.J. at 229-31, 736 A.2d 462.
While all employment discrimination may be wrongful and a "cancer" in society, Lehmann v. Toys `R' Us, Inc., 132 N.J. 587, 600, 626 A.2d 445 (1993), not all cases of employment discrimination warrant an award of punitive damages. Punitive damages are appropriate "when the wrongdoer's conduct is especially egregious." Id. at 624, 626 A.2d 445.
As we set forth earlier, plaintiff's letter of termination referred to her copying of confidential documents as a "theft of company property." The trial court characterized that as egregious behavior. We do not agree.
We note, for instance, that plaintiff herself admitted that her actions breached her duty to her employer and breached the employer's code of conduct. There was no indication, moreover, that this termination letter, and this language, were made available to anyone other than plaintiff. There was no proof, for instance, that this was transmitted or communicated to prospective employers. Plaintiff, moreover, found a new position shortly after she began her job search. The question of defendant's liability for an award of punitive damages should not have been submitted to the jury.

VI
Defendant argues that the jury's award of $405,444 for plaintiff's emotional distress is excessive and should have been remitted. The verdict sheet divided this claim into two portions, the first of which was plaintiff's claim for her emotional distress at not being promoted, for the period between June 2003 and June 2004. As to this, the jury awarded $187,128. The second portion was for plaintiff's emotional distress at not being promoted or as a result of defendant's retaliation against her.
We decline to interfere with the first component of the award and decline to address the second. In our view, plaintiff's proofs as to her emotional distress can fairly be characterized as less than overwhelming. We are guided, nonetheless, by the settled principle that an appellate court may overturn a jury's verdict as excessive only if it is so contrary to the weight of the evidence as to give rise to an inescapable conclusion that it is the product of passion, prejudice or partiality. D.G. ex rel. J.G. v. N. Plainfield Bd. of Educ., 400 N.J.Super. 1, 945 A.2d 707 (App.Div.), certif. denied, 196 N.J. 346, 953 A.2d 764, cert. denied, ___ U.S. ___, 129 S.Ct. 776, 172 L.Ed.2d 756 (2008). We deem interference with the first component of the jury's verdict to be inappropriate.
As to the second component of the award, it includes, as we have specified, damages relating to plaintiff's claim of retaliation, which must be retried. We thus decline to address its quantum.

VII
There are two remaining issues, the first of which is defendant's contention that the trial court erred in awarding $1,398,796 to plaintiff's counsel for fees and costs. One of the elements to be considered in any award of counsel fees in a matter such as this is the level of success achieved. In light of our determination that plaintiff's claim of retaliation must be retried we decline to address whether the quantum of fees and costs is excessive.
The final issue is defendant's assertion that the trial court erred in awarding plaintiff an additional $75,000 to compensate her for the tax consequences *444 she would experience as a result of this recovery. Under the "make whole" policies of N.J.S.A. 10:5-3, a defendant is called upon to compensate a plaintiff for the negative consequences of receiving a lump sum award of economic damages. Ferrante v. Sciaretta, 365 N.J.Super. 601, 607, 839 A.2d 993 (Law Div.2003).
Here, the court undertook a lengthy analysis to determine the proper amount of negative tax liability. While we agree that plaintiff was entitled to such an award in this matter, the amount must abide the results of the retrial.
For the reasons stated, the judgment under review is affirmed in part and reversed in part, and the matter is remanded to the trial court for further proceedings. We do not retain jurisdiction.
NOTES
[1] The trial court granted summary judgment to Curtiss on these last two claims. Plaintiff does not challenge that ruling on appeal.
[2] The performance appraisal was completed some time after plaintiff's initial document production and was not included in that material.
[3] Tartaglia v. Paine Webber, Inc., 350 N.J.Super. 142, 794 A.2d 816 (App.Div.2002), aff'd in part and rev'd in part sub nom. Tartaglia v. UBS PaineWebber, Inc., 197 N.J. 81, 961 A.2d 1167 (2008), dealt with the question whether documents improperly obtained by an employee could be admitted as evidence in the employee's subsequent suit alleging wrongful termination. Admissibility is not a question on this appeal.
[4] Both parties have, in the course of their briefs, cited several unpublished opinions. We discuss these not as precedential but merely as illustrative of the legal theories the parties have argued to us. R. 1:36-3.